497 F.2d 1172
 6 ERC 1644, 4 Envtl. L. Rep. 20,484
 COMMONWEALTH OF KENTUCKY ex rel. Ed W. HANCOCK, Attorney
General, Plaintiff-Appellant,
v.
William D. RUCKELSHAUS, Administrator of the Environmental
Protection Agency,et al., Defendants-Appellees.
 No. 73-2099.
 United States Court of Appeals, Sixth Circuit.
 Argued April 8, 1974.
Decided June 5, 1974.
 
 Ed W. Hancock, Atty. Gen., Commonwealth of Kentucky, David D. Beals, David C. Short, Asst. Attys. Gen., Div. of Natural Resources and Environmental Law Commonwealth of Kentucky, Robert F. Trevey, Atty., Dept. of Natural Resources and Environmental Protection Div. of Air Pollution, Frankfort, Ky., on brief for plaintiff-appellant.
 Andrew P. Miller, Atty. Gen. of the Commonwealth of Virginia, amicus curiae, J. Thomas Steger, Asst. Atty. Gen., Richmond, Va., on brief, for the Commonwealth of Virginia as amicus curiae in support of plaintiff-appellant.
 
 
 1
 Evelle J. Younger, Atty. Gen., Robert H. O'Brien, Asst. Atty. Gen., Nicholas C. Yost, Jan. E. Chatten, Deputy Attys. Gen., Los Angeles, Cal., on brief, for the California Attorney General as amicus curiae in support of the plaintiffs-appellants' interpretation of the Clean Air Act.
 
 
 2
 John L. Hill, Atty. Gen. of Texas, Larry F. York, First Asst. Atty. Gen., Philip K. Maxwell, Asst. Atty. Gen., Austin, Tex., on brief, for the State of Texas as amicus curiae in support of plaintiffs-appellants.
 
 
 3
 Beauchamp E. Brogan, Associate Gen. Counsel, Knoxville, Tenn., for defendants-appellees, Tennessee Valley Authority, Aubrey J. Wagner, Lynn Seeber, J. L. McPherson and T. E. Cavaniss; Robert H. Marquis, Gen. Counsel, Herbert S. Sanger, Jr., Deputy Gen. Counsel, Justin M. Schwamm, Asst. Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., on brief.
 
 
 4
 Robert L. Klarquist, Dept. of Justice, Wallace H. Johnson, Asst. Atty. Gen., George Long, U.S. Atty., Louisville, Ky., Jacques B. Gelin, Robert L. Klarquist, Attys., Dept. of Justice, Washington, D.C., on brief, for the Federal defendants-appellees.
 
 
 5
 Before WEICK and LIVELY, Circuit Judges, and CECIL, Senior Circuit judge.
 
 
 6
 LIVELY, Circuit Judge.
 
 
 7
 This case is concerned with the Clean Air Act Amendments of 1970 (the Act), and more particularly with the meaning of section 118 thereof, 84 Stat. 1689, 42 U.S.C. 1857.[1] The Attorney General of Kentucky brought this action against various federal departments and agencies which operate facilities within the State that employ pollutant emitting equipment. Included among the defendants were the Secretary of the Army and various Army officers, the chairman of the Board of Directors of the Atomic Energy Commission (AEC) and various officials of that agency and the managing officers of the Tennessee Valley Authority (TVA). The complaint recited that a 'Kentucky Plan' for implementation of air quality standards had been adopted, and approved by the Environmental Protection Agency (EPA), and that the plan included a regulation which requires the owners and operators of air pollutant emitting equipment to apply for and obtain from the Kentucky Air Pollution Control Commission (Commission) 'a permit to operate their air contaminant equipment.'[2] Stating that the defendants had refused to apply for and obtain such permits, the plaintiff asked for an order directing them to do so and that they be permanently restrained from refusing to comply with the provisions of section 118 of the Act.
 
 
 8
 Also named defendants were the Administrators of EPA and the regional administrator whose responsibility includes Kentucky. It was complained that these defendants had refused to initiate appropriate actions against the previously named defendants to require their compliance with the permit requirements of the Kentucky Plan. It was alleged that section 113 of the Act[3] requires the EPA administrators to proceed in the manner requested. The relief sought against these defendants was entry of an order directing them to commence an action under section 113 to obtain full compliance by the other defendants with the permit requirement. In addition, a declaratory judgment was sought to the effect that the defendant operators of federal facilities do not have the right to refuse to comply with the permit regulations of the Kentucky Plan and that the EPA defendants, with knowledge of widespread violations by the other federal defendants, do not have a right to fail to initiate appropriate action under section 113.
 
 
 9
 All defendants filed motions to dismiss or for summary judgment. The plaintiff also filed a motion for summary judgment and various parties filed affidavits in support of their motions. Although plaintiff did not concede that all the federal facilities in Kentucky are in compliance with air pollution emission standards or have adopted schedules which will bring them into compliance, the district court determined that resolution of this issue was not required for decision of the case. Upon consideration of the cross-motions, District Judge James F. Gordon granted summary judgment to the defendants and dismissed the action.
 
 
 10
 The issues on appeal are narrow. In the first place, the appellant contends that section 118 of the Act 'requires that those persons in charge of the administration and operation of air contaminant sources owned or operated by the federal government comply with all state requirements respecting the control and abatement of air pollution including Kentucky's permit requirements.' The appellees maintain that section 118 requires compliance with substantive provisions of the Kentucky Plan, but does not compel federal officials to obtain state or local permits for the operation of federal facilities. It is the position of the appellant that the permit requirement is substantive in nature because the Kentucky Plan is so formulated that the State cannot meet its primary responsibility under the Clean Air Act without the use of permits. To this the appellees respond that they are willing to supply, and in fact have supplied, the information sought on the permit application form, but will not seek the permit itself.
 
 
 11
 It is agreed by the parties that section 304 of the Act[4] provides a means by which the United States may be sued for violation of an emission standard or limitation, or order with respect thereto. The appellant argues that this provision only permits abatement actions and that the Commission needs to be able to prevent air pollution as well as abate violations. It is maintained that the permit device is the only means by which the State can exercise preventive control over polluters. The language of section 304 does not require that suit be deferred until an actual violation of an established emission standard occurs. Sub-section (f)(1) clearly permits the filing of an action for violation of a schedule or timetable of compliance. Thus, it is not necessary under section 304, that the State or other aggrieved party wait until an emission standard is violated to bring suit. It may be done at the first instance where the owner or operator of polluting equipment fails to meet a level prescribed in a schedule or timetable of compliance. Such an action would surely be preventive in nature.
 
 
 12
 Both the doctrine of sovereign immunity and the application of the Supremacy Clause of the Constitution are involved in the decision of this case. We view the action against the non-TVA defendants as a suit against the United States. The sovereign can only act through its agents, and the relief sought in this case does not seek to impose personal liability of the named defendants, but rather would affect public administration Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 688-689, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Every declaration of a waiver of sovereign immunity must be strictly construed. United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Section 118 contains no waiver and that included in section 304 does not permit suit to require owners and operators of federal facilities to obtain permits from a state agency in order to continue to operate. The two sections are part of the same Act and must be read together. By failing to include a separate waiver of immunity in section 118 Congress indicated that compliance with its provisions may be compelled by suit only to the extent permitted by section 304. This section provides ample means for enforcement of air quality and emission standards.
 
 
 13
 The TVA defendants do not claim sovereign immunity from suit, but do maintain that the Supremacy Clause of the United States Constitution exempts federal agencies and officials in the performance of their duties from state and local regulations. From the time of McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), this has been a settled principle of our federalism. See Mayo v. United States, 319 U.S. 441, 445-448, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943). The doctrine has been held applicable to TVA. Posey v. Tennessee Valley Authority, 93 F.2d 726, 727 (5th Cir. 1937). The appellant argues that Congress determined in this instance to submit federally owned and operated facilities to state regulation by providing, in section 118, that agencies of the federal government 'shall comply' with state requirements. This does not necessarily follow. An examination of the legislative history of the 1970 Act reveals no congressional intent to subject federal instrumentalities and agencies to state administrative regulations. Separate House and Senate bills were interpreted in the respective Reports as requiring federal agencies to comply with applicable 'emission standards' and the Joint Conference Report stated that the House bill and Senate amendment which became section 118 'declared that Federal departments and agencies should comply with applicable standards of air quality and emissions.' This language appears to us to refer only to substantive requirements and not to encompass the Kentucky regulation which requires permits. In the absence of a clear congressional purpose to subject federal agencies to state regulation, the district court was prevented by the Supremacy Clause from granting the injunctive relief sought by the plaintiff.
 
 
 14
 The plaintiff also relies on Executive Order No. 11507 which was issued on February 4, 1970 as authority for the proposition that the federal agencies and instrumentalities sued here are required to obtain Kentucky permits. This Executive Order, while in force, was never so construed by the Environmental Protection Agency, as shown by documents filed in connection with the motions for summary judgment. Such administrative construction is entitled to great weight particularly when it is supported by the legislative history of the Act to which the Order refers. Griggs v. Duke Power Co., 401 U.S. 424, 433-434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Furthermore, the order in question was superseded by Executive Order No. 11752 on December 17, 1973 which contains this policy statement:
 
 
 15
 Section 1. Policy. It is the purpose of this order to assure that the Federal Government, in the design, construction, management, operation, and maintenance of its facilities, shall provide leadership in the nationwide effort to protect and enhance the quality of our air, water, and land resources through compliance with applicable standards for the prevention, control, and abatement of environmental pollution in full cooperation with State and Local governments. Compliance by Federal facilities with Federal, State, interstate, and local substantive standards and substantive limitations, to the same extent that any person in subject to such standards and limitations, will accomplish the objective of providing Federal leadership and cooperation in the prevention of environmental pollution. In light of the principle of Federal supremacy embodied in the Constitution, this order is not intended, nor should it be interpreted, to require Federal facilities to comply with State or local administrative procedures with respect to pollution abatement and control.
 
 
 16
 We find no support in the language of Executive Order No. 11507 for an interpretation of section 118 in accord with plaintiff's contention, and such an interpretation is clearly negatived by the quoted portion of Executive Order No. 11752.
 
 
 17
 There has been a congressional waiver of immunity with respect to one group of defendants in this action, the EPA administrators. Section 304(a)(2) of the Act (42 U.S.C.A 1857h-2(a)(2)) provides for an action 'against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.' The question here is whether the act or duty which the plaintiff sought to have the court order the EPA defendants to perform is mandatory or discretionary. This requires a consideration of the language of section 113 of the Act since the complaint demands that these defendants be 'ordered to commence appropriate action under Section 113' to obtain full compliance with the Kentucky Plan. A reading of section 113(a)(1) reveals that that Administrator shall give notice to persons in violation of the plan, but that he may thereafter issue an order or bring an action under sub-section (b). The same language is used in section 113(a)(2), which deals with widespread violations of an implementation plan. Again, the Administrator is required to give public notice of his finding, but may enforce any requirement of the plan by issuing an order or commencing an action under sub-section (b). Section 113(b) uses only the discretionary 'may'; the mandatory 'shall' does not appear. The district court correctly held that it had no power to review the decision of EPA not to commence actions under section 113 since this was a decision on 'agency action committed to agency discretion by law.' 5 U.S.C. 701(a)(2).
 
 
 18
 A review of the Act as a whole supports the views set forth in this opinion. Congress clearly intended that federal facilities comply with the emission standards and limitations of the state plan where they are located. Such compliance is mandated by section 118 and made enforceable by legal action pursuant to section 304. By defining the term 'emission standard or limitation' broadly in section 304(f) Congress provided a means of enforcing all of the substantive provisions of a state plan, for prevention as well as after-the-fact violation. The chief purposes of the Act are 'to protect and enhance the quality of the Nation's air resources' (101(b)(1)) and rapidly bring into being 'a program to achieve the prevention and control of air pollution.' (101(b)(2). We do not believe the congressional scheme for accomplishment of these purposes included subjection of federal agencies to state or local permit requirements. Congress did commit the United States to compliance with air quality and emission standards, and it is undisputed in this record that the federal facilities in Kentucky have cooperated with the Commission toward this end. The national dedication to improvement of the environment by prevention and control of air pollution is in no way impeded by exempting federal agencies from the permit requirement of Administrative Regulation No. AP-1, 5.
 
 
 19
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Section 118 provides:
 Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, shall comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements. The President may exempt any emission source of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so, except that no exemption may be granted from section 1857c-- 6 of this title, and an exemption from section 1857c-- 7 of this title may be granted only in accordance with section 1857c-- 7(c) of this title. No such exemption shall be granted due to lack of appropriation unless the President shall have specifically requested such appropriation as a part of the budgetary process and the Congress shall have failed to make available such requested appropriation. Any exemption shall be for a period not in excess of one year, but additional exemptions may be granted for periods of not to exceed one year upon the President's making a new determination. The President shall report each January to the Congress all exemptions from the requirements of this section granted during the preceding calendar year, together with his reason for granting each such exemption.
 
 
 [2]
 Administrative Regulation NO. AP-1, 5 provides:
 (1) No person shall construct, modify, use, operate, or maintain an air contaminant source or maintain or allow physical conditions to exist on property owned by or subject to the control of such person, resulting in the presence of air contaminants in the atmosphere, unless a permit therefor has been issued by the Commission and is currently in effect.
 
 
 [3]
 Section 113 (42 U.S.C. 1857c-8) provides, in part, as follows:
 (a)(1) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section.
 (2) Whenever, on the basis of information available to him, the Administrator finds that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the 30th day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such plan (hereafter referred to in this section as 'period of federally assumed enforcement'), the Administrator may enforce any requirement of such plan with respect to any person--
 (A) by issuing an order to comply with such requirement, or
 (B) by bringing a civil action under subsection (b) of this section.
 (b) The Administrator may commence a civil action for appropriate relief, including a permanent or temporary injunction, whenever any person--
 (1) violates or fails or refuses to comply with any order issued under subsection (a) of this section; or
 (2) violates any requirements of an applicable implementation plan (A) during any period of Federally assumed enforcement, or (B) more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section of a finding that such person is violating such requirement;
 
 
 [4]
 Section 304 (42 U.S.C. 1857h-2) provides in pertinent part:
 (a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--
 (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
 (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
 Definition
 (f) For purposes of this section, the term 'emission standard or limitation under this chapter' means--
 (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,