**UNITED STATES STEEL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**No. 85–07–00954.**

United States Court of International Trade.

July 30, 1985.

Hale, Russell & Gray, New York City (Louis H. Kurrelmeyer), New York City, for intervenor.

## Opinion and Order

RESTANI, Judge:

Plaintiff, United States Steel Corporation (U.S. Steel), has moved for a preliminary injunction to prevent the International Trade Administration of the Department of Commerce (ITA) from terminating the suspension of liquidation of certain carbon steel products from Austria and Sweden pending a final determination under the antidumping laws.

On December 19, 1984, U.S. Steel filed countervailing duty petitions against both the Swedish and Austrian products and an antidumping petition against the Austrian product with the ITA and the International Trade Commission (ITC). On March 20, 1985, the ITA published affirmative preliminary findings in both countervailing duty investigations. 50 Fed.Reg. 11,220 and 11,224 (1985). Pursuant to § 703 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1671b(d)(1) (1982), liquidation of all entries of the subject products entered or withdrawn from warehouse for consumption on or after March 20, 1985 was suspended.[1]

On March 21, 1985, U.S. Steel, invoking the newly enacted § 606 of the Trade and Tariff Act of 1984, 19 U.S.C.A. § 1671d(a)(1) (West Supp.1985), requested the ITA to extend the date of the final determination in the countervailing duty cases to the expected date of the ITC's final determination in the Austrian antidumping case, that is, September 26, 1985.[2]

Law Dept. of U.S. Steel Corp. (J. Michael Jarboe), Pittsburgh, Pa., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, and Platte B. Moring, III, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

1. The ITA published a preliminary affirmative determination in the Austrian antidumping case on June 3, 1985. 50 Fed.Reg. 23,339 (1985).

2. Section 606 of the Trade and Tariff Act of 1984 provides:

Within 75 days after the date of the preliminary determination under section 1671b(b) of this title, the administering authority shall make a final determination of whether or not a subsidy is being provided with respect to the merchandise; except that when an investigation under this part is initiated simultaneously with an investigation under part II, [involving antidumping], which involves imports of the same class or kind of merchandise from the same or other countries, the administering authority, if requested by the petitioner, shall extend the date of the final determination under this paragraph to the date of the final determination of the administering authority in such investigation initiated under part II.

19 U.S.C.A. § 1671d(a)(1) (West Supp.1985).

On March 26, 1985, the ITA granted the extension, however, on July 18, 1985, the ITA directed the Customs Service to terminate the suspension of liquidation. The ITA feared that continuation of suspension beyond 120 days from the preliminary countervailing duty findings would violate the Subsidies Code of the General Agreement on Tariffs and Trade (GATT).[3] The following day, plaintiff, arguing that pursuant to the Congressional scheme, provisional suspension must continue until the ITC's final antidumping decision is published, sought and was granted a temporary restraining order preventing the termination of suspension. Plaintiff also moved for a preliminary injunction and a hearing was ordered. For the reasons that follow, plaintiff's motion is denied and the temporary restraining order is dissolved.

The parties agree that in order to prevail on a motion for a preliminary injunction the movant must show (1) a threat of immediate irreparable harm; (2) that the balance of hardships favors the movant; (3) that the public interest would be better served by issuing rather than denying the injunction; and (4) a likelihood of success on the merits. *S.J. Stile Assocs. v. Snyder*, 68 CCPA 27, 30, 646 F.2d 522, 525 (1981); *see also Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983). Plaintiff has the burden of demonstrating the presence of all four factors. In considering each of the four factors, this court has adopted a "balancing of hardship test" which ascribes weight to each factor. *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 299, 515 F.Supp. 47, 53 (1981); *see also Ceramica Regiomontana, S.A. v. United States*, 7 CIT ——, 590 F.Supp. 1260, 1264 (1984). "The critical factors are the probability of irreparable injury to the movant should the equitable relief be withheld, and the likelihood of harm to the opposing party if the court were to grant the interlocutory injunction." *American Air Parcel For-*

*warding Co.*, 1 CIT at 299–300, 515 F.Supp. at 53.

U.S. Steel has not demonstrated that it will suffer irreparable harm in the traditional sense. It has not argued the existence of injury in the form of loss of competitive market position or the possibility of lost sales, nor has it submitted affidavits or testimony to substantiate a claim of such injury. Rather, plaintiff has attempted to invoke the doctrine of *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed.Cir. 1983). Under the *Zenith* rationale, liquidation constitutes irreparable harm when it prevents effective judicial review by placing all entries subject to contested agency action beyond the reach of the court. *See Atlantic Steel Co. v. United States*, 8 CIT ——, 592 F.Supp. 679, 681–82 (1984). As stated, however, in *American Spring Wire Corp. v. United States*, 7 CIT ——, 578 F.Supp. 1405, 1407 n. 3 (1984), "It is true that imports of [carbon steel products] which entered pending final judicial review will be liquidated. But this fact alone does not answer the question of whether plaintiffs are entitled to this court's assistance in maintaining the advantage suspension of liquidation might otherwise give them."

The underlying issue in this case, whether suspension of liquidation should be terminated before the ITC final antidumping finding, will not be mooted for approximately two months. Since all issues have been briefed once by the parties, this matter will be ready for decision shortly. To this end the court has ordered an expedited briefing schedule on defendant's motion for summary judgment. The parties have agreed that such expedition would be beneficial to all concerned. Thus, in all likelihood, plaintiff will not be deprived of meaningful judicial review of the termination of suspension of liquidation issue.

Because the issue of irreparable harm is neither entirely clear-cut nor totally separable from the other three factors, the court

3. The Agreement on Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade (commonly known as the Subsidies Code), 31 U.S.T. 515, T.I.A.S. 9619, —— U.N.T.S. ——, provides in part 3 of Article 5: "The imposition of provisional measures shall be limited to as short a period as possible, not exceeding four months."

will examine those factors, beginning with the balance of hardship to the parties. In this case, termination of suspension of liquidation will cause Austrian entries during the interim period to avoid countervailing duties of 2.08% *ad valorem* and Swedish entries will avoid duties of 3.38% *ad valorem*. Those countervailing duties, however, are only contingently owing. They are paid in the form of estimated deposits and would only become non-refundable if the final determinations are affirmative. *See* 19 U.S.C. §§ 1671b(d)(2), 1671d(c)(2), 1671f(b) (1982). The degree of harm to plaintiff caused by the avoidance of such duties by its competitors has not been made clear by plaintiff. In addition, as in *American Spring Wire*, duties on future entries are possible. Moreover, plaintiff will not lose the benefit of suspension of liquidation as to antidumping duties, which are estimated at 33% *ad valorem*.

The court recognizes, nonetheless, that plaintiff will suffer some degree of harm if the preliminary injunction is not granted, but the irreversible liquidation of some entries does not weigh heavily when balanced against the hardship to the government if the United States is placed in the role of a possible violator of an international agreement.[4] Plaintiff cites the case of *Timken Co. v. United States*, 6 CIT ——, 569 F.Supp. 65, 71 (1983) for the proposition that the United States will suffer no hardship in this case because it is merely acting as a stakeholder. Plaintiff also argues that an administrative process exists for the concerned importers to contest any duties assessed. The international ramifications of this matter, however, distinguish this case from those which only involve domestic application of the trade laws. On an international level, the government is not merely a collector of funds but rather an active player.

International concerns also make denial of the injunction in the public interest.

Plaintiff claims that the public interest mandates that the court ensure that the ITA follow the law. Plaintiff also asserts that meaningful judicial review is of more importance than the avoidance of any delay in the liquidation process. Although each statement may be true, neither is a persuasive reason for the granting of the injunction. The ITA's actions on their face are not obviously in direct contravention of domestic law, nor is it likely that judicial review will be precluded. Furthermore, no procedural measure could provide adequate compensation to the government if it is compelled to violate an international agreement, particularly if Congressional direction to do so is found to be absent.[5] The ITA's attempt to conform to the GATT is a valid public interest concern.

Finally, U.S. Steel has failed to demonstrate a sufficient likelihood of success on the merits. Because it has made only a slight showing of hardship, plaintiff must show a high degree of success. *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981). Thus far, plaintiff has not been able to point to any express statutory language mandating that suspension of liquidation continue until a specific date. Although plaintiff may demonstrate by implication legislative intent to that effect, the government has presented significant support for the proposition that Congress intended to adhere to GATT.

U.S. Steel, therefore, has failed to satisfy the four-part test for preliminary injunctive relief. Accordingly, as ordered following the hearing on July 25, 1985, an expedited briefing schedule is to be followed, the temporary restraining order is dissolved, and plaintiff's motion is denied.

---

**4.** The parties seem to agree that continuation of the suspension would violate GATT.

**5.** In some cases, a bond or other security may adequately protect the party opposing the injunction. *See Associated Dry Goods Corp. v. United States*, 1 CIT 306, 312, 515 F.Supp. 775, 780 (1981).