**UNITED STATES STEEL CORPORATION, Plaintiff,**

v.

**The UNITED STATES, et al., Defendants.**

**Court No. 85–07–00954.**

United States Court of International Trade.

Sept. 16, 1985.

Law Dept. of U.S. Steel Corp. (J. Michael Jarboe), Pittsburgh, Pa., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, and Platte B. Moring, III, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

Hale, Russell & Gray, New York City (Louis H. Kurrelmeyer), New York City, for intervenor.

## Opinion and Order

RESTANI, Judge.

This matter is now before the court on defendant's motion and plaintiff's cross-motion for summary judgment. At issue is the interpretation placed on § 606 of the Trade and Tariff Act of 1984 by the International Trade Administration of the United States Department of Commerce (ITA). Section 606 allows a party to request that a final determination in a countervailing duty case not be issued until the issuance of a related antidumping duty determination. The purpose of § 606 is to allow hearings on injury to be consolidated before the International Trade Commission (ITC). *See* Cong.Rep. No. 1156, 98th Cong. 2d Sess. 175–176, *reprinted in* 1984 U.S.Code Cong. and Ad.News 5220, 5292–93. Section 606 is silent, however, as to the duration of the provisional remedy of suspension of liquidation in countervailing duty cases in which a postponement of the final determination is requested. Plaintiff claims that § 606 mandates that suspension continue until publication of the final determination. In contrast, the government defendant argues that the ITA properly concluded that Congress intended that it remain faithful to the Subsidies Code of the General Agreements on Tariff and Trade (GATT), 31 U.S.T. 513, T.I.A.S. 9619, 55 U.N.T.S. 194, by terminating suspension of liquidation in a countervailing duty proceeding after 120 days.[1]

---

**1.** The Agreement of Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade (commonly known as the GATT Subsidies Code), 31 U.S.T. 513, T.I.A.S. 9619, 55 U.N.T.S. 194, provides in part 3 of article 5: "The imposition of provision-

## I

The facts of this case are not in dispute. On December 19, 1984, plaintiff, United States Steel Corporation (USS) filed countervailing duty petitions with the ITA and ITC with regard to certain carbon steel products from Sweden and Austria. On the same day USS also filed antidumping petitions against the Austrian product. The ITA published preliminary affirmative determinations in both countervailing duty investigations on March 20, 1985. 50 Fed. Reg. 11,220, 11,224 (1985). Liquidation was suspended on that date pursuant to § 703 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1671b(d)(1) (1982). The next day, plaintiff made its postponement request for its countervailing duty cases under § 606 of the Trade and Tariff Act of 1984, 19 U.S.C.A. § 1671d(a)(1) (West Supp. 1985). The ITA granted the § 606 extension with the expected date of the final antidumping determination being September 26, 1985. On July 18, 1985, however, the ITA, fearing that continuation of suspension would violate GATT, directed the Customs Service to terminate the suspension and begin liquidation. On July 19, 1985, this court granted a temporary restraining order preventing termination of suspension. That order was dissolved upon the court's denial of plaintiff's motion for a preliminary injunction. *United States Steel Corp. v. United States*, 9 CIT ——, 614 F.Supp. 1241 (1985). An expedited briefing schedule was issued with respect to the motions now before the court.

## II.

USS claims that § 606 is clear and unambiguous in meaning, intent, and application. Plainly on the face of the statute, however, this is not so. The statute provides in full:

Within 75 days after the date of [its] preliminary determination under section 1671b(b) of this title, the administering authority shall make a final determination of whether or not a subsidy is being provided with respect to the merchandise; except that when an investigation under this part is initiated simultaneously with an investigation under part II, [antidumping,] which involves imports of the same class or kind of merchandise from the same or other countries, the administering authority, if requested by the petitioner, shall extend the date of the final determination under this paragraph to the date of the final determination of the administering authority in such investigation initiated under part II.

19 U.S.C.A. § 1671d(a)(1) (West Supp.1985). There simply is no language contained in the provision referring to suspension of liquidation, much less indicating the duration of any suspension.

Plaintiff argues that § 606 was designed to conform to an existing body of countervailing duty law which mandates suspension of liquidation between an affirmative preliminary ITA determination and the final finding in the case. More specifically, plaintiff seeks to draw support from § 703(d)(1) of the Trade and Tariff Act of 1930, as amended, 19 U.S.C. § 1671b(d)(1) (1982), which compels suspension of liquidation upon a preliminary affirmative determination.[2] Plaintiff stresses that the legislative history of § 703(d) notes that "[t]he requirement that liquidation be suspended upon an affirmative preliminary determination is intended to preserve the status quo during the remainder of the investigation." S.Rep. No. 249, 96th Cong., 1st Sess. 50, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 436. Plaintiff argues that in drafting § 606 Congress intended to maintain suspension of liquidation regard-

al measures shall be limited to as short a period as possible, not exceeding four months."

**2.** 19 U.S.C. § 1671b(d)(1) (1982) provides:
If the preliminary determination of the administering authority under subsection (b) of this section is affirmative, the administering authority—

(1) shall order the suspension of liquidation of all entries of merchandise subject to the determination which are entered, or withdrawn from warehouse, for consumption on or after the date of publication of the notice of the determination in the Federal Register.

less of the duration of time between the preliminary ITA determination and the final determination in the case.

Plaintiff's view that Congress' desire to maintain the status quo overrides other considerations is not persuasive in light of an examination of all relevant countervailing duty provisions. First, § 703(d) merely states when suspension of liquidation must commence. It does not specify when suspension of liquidation must terminate. Second, that the time for termination is after the expiration of the 120 day period may be determined from a review of the entire statutory framework.

The provision controlling the date of the Commission's final determination after the ITA issues a preliminary affirmative finding is § 705 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1671d (1982). Section 705(b)(2) calls for a final ITC determination within 120 days after the date the ITA makes a preliminary affirmative finding. Although the legislative history of § 705 does not specifically mention a reason for the 120 day limit, the statute itself and the general legislative history of § 705 are evidence that § 705 was enacted to be GATT consistent. As the legislative history of § 705 states: "After an affirmative preliminary determination in a countervailing duty investigation, Article 2(4) of the Agreement requires simultaneous consideration of whether a subsidy and injury exist. Section 705 would implement this requirement for the United States." S.Rep. No. 249, 96th Cong., 1st Sess. 57, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 443.[3] Furthermore, § 705(b)(2) provides, alternatively, that the ITC's final decision may be made within 45 days of the ITA's final determination. This, together with the 75 day period provided in § 606 for non-extended cases equals 120 days. Obviously Congress intended to design the statute to adhere to the 120 day limit for provisional remedies. In sum, there is nothing on the face of the provisions implementing the initiation and duration of countervailing duty proceedings, nor in the legislative history of those provisions, which compels the conclusion that absent critical circumstances,[4] Congress intended that a provisional suspension last longer than 120 days.

■ Plaintiff next calls the court's attention to § 613 of the Trade and Tariff Act of 1984, 19 U.S.C.A. § 1671b(h) (West Supp. 1985). Section 613 concerns upstream subsidy cases. The section extends the time period in which a final determination is to be made to 165 days after a preliminary finding, while explicitly limiting suspension of liquidation to the 120 day time period after the preliminary determination. Plaintiff contends that § 613 is an example of a situation in which Congress explicitly limited suspension of liquidation to 120 days, although time for the final determination may be extended beyond the four month period. Plaintiff argues that § 613 supports the proposition that had Congress intended to limit suspension of liquidation under § 606, the legislature would have made the limit explicit. Therefore, continues plaintiff, the absence of a 120 day limit in § 606 should not be deemed unintentional. *See Kentucky ex rel. Hancock v. Ruckelshaus*, 362 F.Supp. 360, 365 (W.D. Ky.1973), *aff'd*, 497 F.2d 1172 (6th Cir. 1974), *aff'd sub nom, Hancock v. Train*,

---

3. Section 703 was also intended to be GATT consistent. The legislative history of § 703(a), as embodied in the Senate Report states:

    Before a countervailing duty investigation is initiated, Article 2(4) of the Agreement requires consideration whether both a subsidy and injury exist. The petition determination by the authority under section 702(c) and the determination by the ITC under section 703(a) will implement that requirement for the United States.

    S.Rep. No. 249, 96th Cong., 1st Sess. 49, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 435.

4. Under 19 U.S.C. § 1671b(e)(2) (1982), when the ITA finds "critical circumstances" it is permitted to order suspension of liquidation of subject merchandise entered on or after the date ninety days before suspension was first ordered. This would, of course, extend the provisional remedy of suspension to a duration of 210 days. Such ninety day extension, however, is expressly authorized in the GATT Subsidies code at article 5 part 9.

426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) ("[W]here a particular provision appears in a statute, the failure to include that same requirement in another section of the statute will not be deemed to have been inadvertent."); *see also Dunlop v. First National Bank of Arizona,* 399 F.Supp. 855, 856 (D.Ariz.1975).[5]

While the maxim of construction which plaintiff attempts to invoke has "particular vitality when applied to carefully constructed and intertwined statutory provisions such as those found in [the Tariff Schedules]," *Algoma Tube Corp. v. United States,* 9 CIT ——, Slip Op. 85–89 at 9 (August 28, 1985), it has minimal value in the context of the constantly developing law of unfair international trade practices. The United States' countervailing duty law was restructured by the Trade and Tariff Act of 1979 and amended again by 1984 legislation in an attempt to cure developing problems. *See* H.R.Rep. No. 725, 98th Cong., 2nd Sess; *see also* Holmer & Bello, *The Trade and Tariff Act of 1984: The Road to Enactment,* 19 Int'l. Law. 287, 291 (1985). The two Trade Acts and their various provisions do not fit together in detail to the same degree as various items within a particular Tariff Schedule. Plaintiff's contextual analysis is therefore not a dispositive guide as to the interpretation of § 606.

Furthermore, "[i]n determining the purpose of legislation, it is appropriate to consider not only the effect of the legislation itself, but also the history and setting out of which the legislation arose." *Turner v. Littleton-Lake Gaston School District,*

442 F.2d 584, 587 (4th Cir.1971). Section 606 is part of a group of provisions of the Trade and Tariff Act of 1984 designed to aid small businesses. *See* Holmer & Bello, *The Trade and Tariff Act of 1984: Principal Antidumping and Countervailing Duty Provisions,* 19 Int'l.Law. 639, 645–658 (1985). "One of the enduring themes in the hearings that led up to the 1984 Act was the stated desire to simplify and streamline the administration of the [trade] laws, making them more accessible to small businesses." *Id.* at 645. The only clearly intended purpose of the statute appears to be to allow all parties to conserve costs by utilizing one consolidated hearing covering related countervailing duty and antidumping injury proceedings instead of two separate agency adjudications. H.Conf.Rep. No. 1156, 98th Cong., 2d Sess. 175–76, *reprinted in,* 1984 U.S.Code Cong. & Ad. News 5220, 5292–93.

Plaintiff argues that a 120 day limit on suspension would render § 606 meaningless because a petitioner would not seek an extension if suspension could terminate before final determination is reached. Although some entries may be liquidated if provisional suspension is terminated after 120 days, it is not clear that every petitioner would find the administrative benefits of § 606 to be outweighed by the detriment of the gap in suspension of liquidation.

Moreover, despite the scarcity of legislative history specifically concerning § 606, the overall intent of Congress to adhere to GATT in enacting the 1984 legislation is quite clear. Although the Trade Agreements Act of 1979 did not constitute either

---

**5.** Further seeking to demonstrate that there was no inadvertence on the part of Congress in enacting § 606, plaintiff directs the court's attention to two letters. The first letter was written by the spokesman of a lobbying group to the Department of Commerce and describes the group's discussions with legislators concerning GATT and § 606. The second letter is a correspondence from Senator John Heinz, the proponent of § 606, to the Secretary of Commerce containing the Senator comments on the proposed regulation that would implement § 606. Like the first letter, Senator Heinz's letter was written after § 606 was enacted. Plaintiff asserts that it offers the letters not to demonstrate

the legislative intent regarding suspension of liquidation under § 606, but merely to demonstrate that the suspension issue was not inadvertently overlooked. Plaintiff's argument here, even as to the issue of inadvertence, goes to legislative intent. Such post enactment statements, even those by the author of the legislation, cannot be considered by the court, because the statements cannot demonstrate intent at the time of passage. *See Selman v. United States,* 204 Ct.Cl. 675, 685 n. 6, 498 F.2d 1354, 1359 n. 6 (1974); ("[N]o member of the legislature, outside of the legislature, is empowered to speak with authority for that body").

Congressional approval or disapproval of the GATT Subsidies Code, S.Rep. No. 249, 96th Cong., 1st Sess. 38–39 (1979), the objective of GATT consistency was embodied in the Act. *See* Statement of Administrative Action for the Trade Agreements Act of 1979, H.Doc. No. 96–153, 96th Cong., 1st Sess. 2–6 (1979), *reprinted in* 1979 U.S. Code Cong. & Ad.News 665, 666–68. Similarly, conformity with GATT was an underlying principal in the Trade and Tariff Act of 1984. As the House Report stated:

> [A] basic criterion guiding the Committee in including amendments of these laws in the bill was to maintain their consistency with the letter and spirit of the General Agreement on Tariffs and Trade (GATT), particularly with Articles VI and XVI, which govern the use of these remedies, and the Agreement on Antidumping Measures and the Agreement on Subsidies and Countervailing Measures negotiated under the auspices of the GATT and signed by the United States in 1979.

H.R.Rep. No. 725, 98th Cong., 2nd Sess. 5 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 5127, 5131. *See also* S.Rep. 249, 96th Cong. 1st Sess. 38 (1979) ("The revisions are all consistent with the [GATT] agreements. . . .").

▌ Plaintiff, however, argues that this case presents just one example of several situations in which Congress deliberately did not follow the GATT Subsidy Code in promulgating the domestic countervailing duty law. To support that position, plaintiff cites, in particular, article 5, clause 1 of the Subsidy Code which states that "[p]rovisional measures shall not be applied unless the authorities concerned judge that they are necessary to prevent injury being caused during the period of investigation." 31 U.S.T. 513, T.I.A.S. 9619, 55 U.N.T.S. 194. Plaintiff claims that no such provision is contained in the domestic law. Citing *Republic Steel Corp. v. United States,* 8 CIT ——, 591 F.Supp. 640, 646 (1984), plaintiff asserts that the standard embodied in the Subsidies Code for determination of injury at the preliminary stage is stricter than that contained in the domestic law. Plaintiff's example, however, provides no direct evidence that Congress has ever intentionally decided to violate GATT. Instead, plaintiff merely raises a question of interpretation of the language of GATT. Although Congress chooses language which differs from the often broad language of GATT, the legislature's choice of words is its attempt to implement in a concrete and specific manner its view of the obligations of the United States stemming from the international trade agreements. This was explained in the Senate Report which stated:

> The committee is aware that some major trading partners are concerned that particular elements of this bill do not repeat the precise language of the agreements. This bill is drafted with the intent to permit U.S. practice to be consistent with the obligations of the agreements, as the United States understands those obligations. The bill implements the United States understanding of those obligations.
>
> Our trade laws are, and long have been, subject to administrative and judicial review processes. These processes both lead to and require greater precision in our law than the often vague terms of the agreements or implementing regulations of other countries. Furthermore, unfamiliar terms in the agreements, or terms which may have a different meaning in United States law than in international practice or another country's laws, need to be rendered into United States law in a way which ensures maximum predictability and fairness.

S.Rep. No. 249, 96th Cong., 1st Sess. 36 (1979). Thus, it appears that Congress would not use inaction or implication in varying domestic countervailing duty law from that envisioned by GATT.[6] The statute at issue, which is silent regarding the length of provisional suspension, should

---

**6.** Plaintiff seems to have retreated somewhat from its previous concession that its interpretation of § 606 is not GATT consistent. Plaintiff's interpretation, if not an absolute violation of GATT, is close enough so that Congress would have discussed it, if it had been intended.

**502**

not be interpreted by means of tenuous arguments to yield a construction which would be in contravention of GATT.

■ Furthermore, "[c]aution must temper judicial creativity in the face of legislative ... silence." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). In the wake of that silence, the interpretation of the agency charged with administering a statute is entitled to substantial deference. *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). Deference is appropriate especially when "the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' " *Frontier Airlines, Inc. v. CAB,* 621 F.2d 369, 372 (10th Cir.1980) (quoting *Power Reactor Development Co. v. Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961) *quoting Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933)).

■ The interpretation of the ITA, the agency charged with implementing § 606 must be afforded great weight. Not only did the ITA conform to the GATT 120 day limit in the case at bar by its actions of

July 18, 1985, but it has reduced that interpretation to proposed regulations published on June 10, 1985 at 50 Fed.Reg. 24,207.[7] Although the new regulation is still in the rulemaking process, it obviously reflects the view of the agency. *See First Multifund For Daily Income, Inc. v. United States,* 221 Ct.Cl. 123, 130–31, 602 F.2d 332, 337 (1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980) ("The form in which an agency manifests its interpretation of a statute it administers is immaterial; the critical thing is whether there is such an interpretation and how settled it has become".)

■ The action by the ITA terminating the provisional suspension of liquidation is in harmony with Congress' general intent to make domestic law consistent with GATT, and there is no indication of specific intent to vary here from Congress' general purpose. Accordingly, plaintiff's cross-motion for summary judgment is denied, defendant's motion for summary judgment is granted, and this case is hereby dismissed.

---

7. The proposed regulation for § 606 states that if a countervailing duty proceeding is postponed under the statute for the duration of a simultaneous antidumping case, the Secretary of Commerce will:

End any suspension of liquidation ordered in the preliminary determination not later than 120 days after the date of publication of

the preliminary determination, and not resume it unless the ITC publishes a final affirmative determination, or, if the merchandise is from a country not entitled to an injury test for the merchandise, the Secretary publishes a countervailing duty order.

50 Fed.Reg. 24,225 (1985).