See also, D.C., 625 F.Supp. 1500.

## In re LILCO SECURITIES LITIGATION.

### No. CV 84–0588.

United States District Court,
E.D. New York.

Aug. 25, 1986.

Abbey & Ellis, New York City, Berger & Montague, P.C., Philadelphia, Pa., Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiffs.

Shea & Gould, New York City, for individual defendants.

Susan E. Silverman, Hicksville, N.Y., for defendant LILCO.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Underwriters.

Cravath, Swaine & Moore, New York City, for defendant Price Waterhouse.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

These proposed class actions, which have been consolidated before this Court for all purposes, arise out of the efforts of the Long Island Lighting Company, Inc. ("LILCO") to construct and operate a nuclear-powered electricity generating plant located in Shoreham, New York ("Shoreham"). These lawsuits [1] pit shareholders of various classes and series of LILCO stock against LILCO, its officers and directors (the "Individual Defendants"),[2] various underwriters of LILCO stock, (the

---

[1] The actions consolidated before the Court are: *Seidel v. Pierce,* 84 Civ. 0662; *Silver v. LILCO,* 84 Civ. 0716; *Schaul v. LILCO,* 84 Civ. 0727; *Garfinkel v. LILCO,* 84 Civ. 0753; *Donsky, Levin & Dashevsky, P.C. Profit Sharing Plan v. LILCO,* 84 Civ. 0754; *Balsam v. LILCO,* 84 Civ. 0756; *Bronheim v. Pierce,* 84 Civ. 0774; *Feder v. LILCO,* 84 Civ. 0799; *Stepak v. LILCO,* 84 Civ. 0854; *Muldrow v. Pierre,* 84 Civ. 0866; *LILCO derivatively by David Steinberg v. Paterson,* 84 Civ. 1139; *Goldfarb v. Pierce,* 84 Civ. 1594; *Cicci v. LILCO,* 84 Civ. 1963; and *Kaszirer v. LILCO,* 84 Civ. 2054. Some actions have been withdrawn: *Weiland v. LILCO,* 84 Civ. 0589; *Mumken v. LILCO,* 84 Civ. 0658; *Allen v. LILCO,* 84 Civ. 1455.

[2] The Consolidated Complaint names the following individuals as defendants and, for purposes of clarification, has divided them into three groups:

| INDIVIDUAL DEFENDANT | POSITION |
|---|---|
| **A. Inside Director Defendants** | |
| Charles R. Pierce | 1974—Became President and elected to Board of Directors. 1978—Became Chairman of the Board and Chief Executive Officer. |
| Wilfred O. Uhl | January 1, 1978—Became President and elected to Board of Directors. |
| Frank C. Mackay* | March 1983—Elected to Board of Directors. 1936 to 1984—Employed by LILCO; Senior Vice President—Commercial Operations at relevant times. |
| **B. Officer Defendants** | |
| Thomas H. O'Brien | Since 1975—Senior Vice President—Finance and principal financial officer. |
| Michael Czumak | Since 1974—Controller and Chief Accounting Officer. |
| Edward E. Eacker | Since 1974—Treasurer. |
| James W. Dye, Jr. | Since 1976—Senior Vice President—Operations. |
| **C. Outside Director Defendants** | |
| William J. Catacosinos | Since February 1978—Director. January 30, 1984—Elected Chairman of the Board and Chief Executive Officer. |
| Alan M. Fortunoff | Since 1981—Director. |
| Winfield E. Fromm | 1978 to 1983—Director. |
| Nathaniel M. Giffen | Since 1974—Director. |
| Lionel M. Goldberg | Since 1973—Director. |
| John D. Maxwell | 1975 to 1983—Director. |
| Basil A. Paterson | Since 1983—Director. |

"Underwriters")[3] and Price Waterhouse, an accounting firm. In the First Amended and Consolidated Class Action Complaint (the "Consolidated Complaint") plaintiffs allege that defendants' conduct violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, and constituted common-law fraud and negligent misrepresentation. Plaintiffs have also commenced a stockholder derivative action on behalf of the corporation against LILCO's directors for fraud, breach of fiduciary duty, and waste of corporate assets.[4] Before the Court at this time are plaintiffs' motions to certify these consolidated cases as a class action pursuant to Rule 23(b)(3), (c)(1), Fed. R.Civ.P. Plaintiffs propose eight subclasses of plaintiff shareholders,[5] and four sub-

| INDIVIDUAL DEFENDANT | POSITION |
| --- | --- |
| C. Outside Director Defendants | |
| Eben W. Pyne | Since 1959—Director. |
| John H. Talmage | Since 1982—Director. |
| Phyllis S. Vineyard | Since 1974—Director. |

Consolidated Complaint, ¶ 8.

* Because Mackay has been employed by LILCO since 1936 and remained an officer at the time of his election to the Board of Directors, the Consolidated Complaint identifies him as both an Inside Director Defendant and an Officer Defendant.

---

3. Four investment banking firms are named collectively in the Consolidated Complaint as Lead Underwriter Defendants: Blyth Eastman Paine Webber; E.F. Hutton & Company, Inc.; Lehman Brothers Kuhn Loeb, Inc.; and Prudential-Bache Securities. ¶ 12. Eight additional investment banking firms, collectively named the Series W Underwriter Defendants, are also named in the Consolidated Complaint. They are: Goldman, Sachs Co.; Morgan Stanley & Co., Inc.; Bear Stearns & Co.; Drexel Burnham Lambert, Inc.; L.F. Rothschild, Unterberg, Towbin; Shearson-American Express Inc.; Warburg Paribas Becker; and Wertheim Co., Inc. ¶ 13.

4. The Consolidated Complaint has already been discussed at length by the Court. *See In re*

*LILCO Securities Litigation,* 625 F.Supp. 1500 (E.D.N.Y.1986). To recount the allegations briefly, Counts 1 through 7 allege violations of § 11 by LILCO, its officers and directors, Price Waterhouse, and some of the underwriters. Counts 8 and 9 allege claims under § 10(b) and common-law fraud against LILCO, its officers and inside directors. Count 10 alleges common-law negligent misrepresentation against all defendants. 625 F.Supp. at 1502. Counts 11 and 12 are stockholder derivative claims for fraud and breach of fiduciary duty, respectively.

5. The eight proposed plaintiff subclasses are as follows:

| Count | Proposed Representative(s) | Description of Class and Security | Claim(s) |
| --- | --- | --- | --- |
| 1 | Cohen, Stepak | All those who purchased LILCO common stock under LILCO's Automatic Dividend Reinvestment Plan pursuant to a prospectus dated March 11, 1981. | § 11 |
| 2 | Donsky, Levin Dashevsky, P.C. Profit Sharing Plan ("Donsky Levin") | All those who purchased LILCO common stock pursuant to subscription rights issued by LILCO on January 5, 1982, with the common stock offered pursuant to a prospectus dated January 5, 1982. | § 11 |
| 3 | Cohen, Feder, Stepak | All those who purchased LILCO common stock under LILCO's Automatic Dividend Reinvestment Plan pursuant to a prospectus dated April 14, 1982. | § 11 . |

classes of defendant underwriters.[6] For the reasons stated below, plaintiffs' motions are granted.

## BACKGROUND

The focus of these lawsuits is the defendants' efforts to finance the construction of the Shoreham nuclear power plant. The Consolidated Complaint alleges that the Shoreham construction project was mismanaged consistently by LILCO, resulting in extraordinary cost overruns and lengthy delays. Consolidated Complaint, ¶¶ 26–31. The enormous drain on LILCO's cash flow caused by the Shoreham project forced LILCO to raise debt and equity capital through the sale of securities to the public. During a nine-year period LILCO obtained approval from its stockholders to issue preferred and common stock and raised hundreds of millions of dollars to pay for Shoreham's construction costs. The plaintiffs contend that public confidence in LILCO and LILCO's ability to raise funds in capital markets, was heavily dependent upon the public's belief that Shoreham would be a financial success. Of course, if potential investors were aware that the project was mismanaged, that it might never open, or that LILCO would not be allowed to look to its rate-payers to recoup the cost, investor confidence in LILCO and Shoreham would be shaken and LILCO might not be able to raise enough funds to complete Shoreham. Plaintiffs allege that from 1975 to 1983 (the "Class Period"), defendants embarked upon a scheme, plan, and course of conduct to conceal the probability that LILCO would not

| Count | Proposed Representative(s) | Description of Class and Security | Claim(s) |
|---|---|---|---|
| 4 | Joseph Silver and Lois Silver (as joint owners) | All those who purchased LILCO Series V preferred stock from September 9, 1982 to February 8, 1984. | § 11 |
| 5 | Bronheim, Balsam, Century Maintenance | All those who purchased LILCO common stock under an offering by LILCO of common stock pursuant to a prospectus dated November 15, 1982. | § 11 |
| 6 | Cicci | All those who purchased LILCO Series W preferred stock from March 29, 1983 to February 10, 1984. | § 11 |
| 7 | Schaul | All those who purchased LILCO Series X preferred stock from August 22, 1983 to February 10, 1984. | § 11 |
| 8, 9 and 10 | All Plaintiffs | All persons who purchased LILCO securities from March 7, 1978 to December 22, 1983 and continued to hold such securities on December 22, 1983. | § 10(b), common-law fraud and negligent misrepresentation. |

---

**6.** Plaintiffs Joseph Silver, Lois Silver, Gloria Bronheim, Bluma Balsam, Hildeguard Schaul, and Century Maintenance Supply Corporation ("Century Maintenance") have moved to maintain their lawsuits as class actions against the Lead Underwriter Defendants individually and as representatives of the following four subclasses:

1. All underwriters who participated in an offering of 8,137,060 shares of LILCO common stock to LILCO common shareholders, commencing on or about January 4, 1982;

2. All underwriters who participated in the public offering of 3,000,000 shares of LILCO Series V preferred stock, commencing on or about September 9, 1982;

3. All underwriters who participated in the public offering of 8,000,000 shares of LILCO common stock, commencing on or about November 15, 1982; and

4. All underwriters who participated in the public offering of 4,000,000 of LILCO Series X preferred stock, commencing on or about August 22, 1983.

recover the entire cost of Shoreham from its rate-payers or the possibility of cancelling or terminating Shoreham or the effects such an event would have on LILCO's financial condition[,] [and] [t]he cost overruns, control failures, mismanagement, and gross negligence associated with Shoreham ... were not disclosed. Consolidated Complaint, ¶ 38. The Court need not recount the story of how Shoreham's cost overruns and delays became known to the public and to investors. It suffices to say that in late 1983 and early 1984, a series of disclosures revealed, for the first time, the extent of LILCO's mismanagement of Shoreham and LILCO's weakening financial status, all of which resulted in a substantial drop in the value of LILCO stock. Consolidated Complaint, ¶ ¶ 87–102. The plaintiffs charge that LILCO, the Individual Defendants, Price Waterhouse, and some of the Underwriters violated § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, by issuing seven prospectuses that contained materially false information. Consolidated Complaint, ¶ ¶ 103–80 (Counts 1–7). Plaintiffs further charge that LILCO and its inside directors and officers violated § 10(b) of the Securities and Exchange Act of 1934 (Count 8) and committed common-law fraud (Count 9) by knowingly or recklessly disclosing materially false and misleading information to the public about Shoreham and LILCO. Consolidated Complaint, ¶ ¶ 181–95. Plaintiffs also allege that all defendants committed common-law negligent misrepresentation by reason of the foregoing acts. Consolidated Complaint ¶ ¶ 196–98 (Count 10).

## CLASS CERTIFICATION

In order for these consolidated actions to be certified as a class action under Rule 23(b)(3), plaintiffs must persuade the Court that: (1) the class is so large as to make individual joinder impracticable; (2) there are questions of law or fact common to the class that predominate over any questions affecting only individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties

will fairly and adequately protect the interests of the class; and (5) a class action is superior to other available methods for the fair and effective adjudication of the controversy. Rule 23(a)(1)-(4), (b)(3). When determining whether common questions predominate and if a class action is a superior method of adjudication, Rule 23(b)(3) states that the Court should also consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Before turning specifically to defendants' arguments for denying class certification, the Court concludes, in part because defendants concede the issue, that the size of the proposed class satisfies Rule 23(a)(1). Although the exact amount of class members is unknown at this time, it is likely that they number in the tens of thousands and are distributed throughout all fifty states.

Defendants oppose the motion for class certification on several grounds. While conceding the numerosity and commonality elements of Rule 23(a)(1) and (a)(3), they argue that: (1) common questions do not predominate; (2) the class action would be unmanageable; and (3) the proposed named plaintiffs are neither typical nor adequate representatives of their respective subclasses.

### A. PREDOMINANCE/SUPERIORITY

The issues of predominance and superiority, which derive from separate clauses in the first sentence of Rule 23(b)(3), are closely linked. Neither is amenable to a bright-line test. Satisfaction of both elements will ensure that economies of time and money can be achieved by allowing a few representatives to proceed on behalf of

a larger whole and that the most efficient method of adjudicating the lawsuit fairly is by class action. Therefore, many of the considerations relevant to predominance will also be present when the Court addresses the superiority issue.

### 1. "Changing Mix of Information"

Defendants maintain first that questions of law or fact do not predominate with respect to the proposed subclass under Counts 8, 9, 10. They argue that the continuously varying events concerning Shoreham over the lengthy Class Period and the unprecedented discussion about Shoreham in local news media make class certification unsuitable because, at trial, individual issues of plaintiffs' knowledge, reliance, and damages will take precedence over common issues. Making a brief reference to the entirety of their extensive exhibit books,[7] LILCO and the Individual Defendants suggest that the continuously changing "total mix" of information available to investors, the unusual length of the Class Period (almost six years), and enormous amount of different information available to the public would make it virtually impossible to identify a common, much less a predominant set of facts, upon which plaintiffs relied to their detriment.

This argument is, however, contrary to both the allegations in the Consolidated Complaint and the weight of authority. The gist of plaintiffs' action is that over a seventy-month period the defendants failed to disclose or misrepresented, among other things, the cost, completion date, and mismanagement of Shoreham, the need for additional electricity generating capacity, LILCO's income, the likelihood that Shoreham would operate, and whether the cost

of construction could be recovered from rate-payers, all as part of a common course of conduct to promote the sale of common stock and ensure adequate capital financing for Shoreham. Consolidated Complaint, ¶ 184. Insofar as this Court is limited to the allegations in the Consolidated Complaint and discovery conducted solely for the purposes of this motion, defendants' factual contention, as supported by their exhibits, that the class action would be overwhelmed by individual issues, cannot be accepted by the Court at this juncture. The Supreme Court has cautioned lower courts to avoid a preliminary inquiry into the merits of a suit to determine whether it may be conducted as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). On a motion for class certification, a Court should become familiar with the issues in the case, but only to the extent they relate to the fair and effective adjudication of the lawsuit.

In any event, plaintiffs' allegations of a common course of conduct are within the standard set in this and other Circuits for class certification. *Green v. Wolf*, 406 F.2d 291 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). With respect to federal securities claims under § 10(b) and Rule 10b–5, issues of individual reliance are largely irrelevant because reliance is presumed if the statement or omission is material. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Schlick v. Penn-Dixie Cement Corporation*, 507 F.2d 374, 380–81 (2d Cir.1974), *cert. denied*, 421 U.S.

---

**7.** As part of their opposition to the motion for class certification, defendants have submitted four large exhibit books, totalling thousands of pages. The first exhibit book appears to contain every newspaper article published in *The New York Times* and *Newsday*, from January 5, 1978 to December 23, 1983, concerning either Shoreham or LILCO. Affidavit of Michael Lesch, Exhibit A. The second exhibit book, which consists of sixty-five separate documents, contains every annual report, prospectus, and 8–K, 10–Q,

and 10–K Report filed by LILCO during the Class Period. *Id.*, Exhibit B. Aside from the facts contained in these and other documents, the Court is dismayed that both sides did not adhere to the Court's instructions concerning the length of written submissions. The vast bulk of paper before the Court, most of which is of dubious relevance to this motion, accomplishes little save increasing the cost of litigation and impeding the prompt disposition of pending motions.

976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). In addition, where the alleged misrepresentations are contained in written documents addressed to the class as a whole rather than an individualized sales pitch, common issues are more likely to predominate over individual issues. *See In re Scientific Control Corporation Securities Litigation*, 71 F.R.D. 491, 500–05 (S.D.N.Y.1976) and cases cited therein.

Issues of individual reliance under state laws may or may not be significant at some point in the proceedings.[8] Defendants may secure judgment on liability on other grounds, or the case may be settled before trial, thus obviating the need to address individual issues under state law. Nevertheless, to the extent that individual issues in pendent state law claims predominate over common issues, the Court may create subclasses, Rule 23(c)(4), or dismiss the pendent state claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, class certification should not be denied merely because the class period is lengthy. *E.g., In re Saxon Securities Litigation*, [1983–1984 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 99, 691 (S.D.N.Y. Feb. 23, 1984) (six year class period); *Weiss v. Drew National Corporation*, 71 F.R.D. 429, 430 (S.D.N.Y.1976) (four years). In addition, class certification should not be denied because the common course of conduct included a series of different activities, *Green*, 406 F.2d at 300–01 (citing Rule 23 Advisory Committee Note); *Weiss*, 71 F.R.D. at 430, or there were multiple disclosures by defendants during the Class Period, *Dura-Bilt Corp. v. Chase Manhattan*

*Corp.*, 89 F.R.D. 87, 96 (S.D.N.Y.1981). Given the magnitude of the Shoreham construction project, the attendant delays in completion, and the amount of money that had to be raised to finance the nuclear power plant, it is not at all suprising that the proposed Class Period is so long or the common course of conduct involved multiple disclosures.

The only issue in which individual issues clearly predominate over common issues is damages. Nevertheless, this is not a basis for denying class certification because Rule 23 and other federal statutes create procedural mechanisms to ease the burden on the Court and the parties. The trial may be bifurcated with respect to liability and damages, with damages questions being referred to a Magistrate or Special Master for findings. The better course is to certify the actions and consider later whether subsequent developments merit decertification. Rule 23(c)(1), (4).

### 2. Choice of Law

Second, defendants argue that the state common-law claims of fraud and negligent misrepresentation should not be certified because of unmanageability and a lack of predominance. Relying on the Supreme Court's decision in *Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), defendants contend that the geographic diversity of plaintiffs could compel the Court to consider the substantive law of every state. Defendants suggest that this would allow individual issues to predominate, and render a trial on liability unmanageable, making this case doubly unsuitable for class treatment. Defendants point to several courts have refused to certify state law claims.[9]

---

**8.** *See* pages 11–12 of this Memorandum and Order.

**9.** Individual Defendants and LILCO's Amended Memorandum of Law at 114, n. 41. Plaintiffs have cited an equally large number of cases where courts have certified state law claims. Plaintiffs' Reply Memorandum at 95, n. 43. The Court's own research has uncovered other cases, which are also divided on the issue. *Nelson v.*

*Quimby Island Reclamation District Facilities Corp.*, 26 Fed.R.Serv.2d (Callaghan) 755 (N.D. Cal.1978) (certifying state law claims); *Raymond v. Miller & Schroeder Municipals, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 99,714 (D.Minn. June 29, 1983) (denying certification); *In re Consumers Power Company Securities Litigation*, 105 F.R.D. 583, 609 (E.D.Mich.1985) (denying certification).

In *Shutts*, the Supreme Court held that it was unconstitutional for Kansas to apply its own law in a nationwide class action brought in Kansas involving a failure to make royalty payments on natural gas leases. Writing for the majority, Justice Rehnquist noted that a state court's decision to apply the law of the forum as the rule of decision is restricted, to some extent, by the Due Process Clause and the Full Faith and Credit Clause, 472 U.S. at ——, 105 S.Ct. at 2978–79 (citing *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) ), and that it would be unconstitutional, apparently on due process grounds, for Kansas to apply its own law. 472 U.S. at ——, 105 S.Ct. at 2980–81. To the extent that the Court could not label the issue a "false conflict," the Court stated specifically that it was not ruling which state's rule of laws should apply and, under the Constitution, a state may be free to apply its own law or that of other states. *Id.*

Without doubt, *Shutts* does not require us to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence. Defendants, therefore, misread *Shutts* when they argue that this Court may be forced to consider the law of all fifty states. In any event, the spectre of having to apply different substantive law does not warrant refusing to certify a class on the common-law claims. After *Shutts* it is not at all certain that application in this case of one state's law is unconstitutional and in the event New York is applied, it may be that New York choice of law rules direct the application of New York law. At this juncture, it is not necessary for the Court to decide the choice of law issue. Assuming, however, that New York law of fraud and negligent misrepresentation would be applied, there is a conflict as to whether defrauded class plaintiffs must show reliance on an individual basis. *Compare Weinberg v. Hertz Corporation*, 116 A.D.2d 1, 499 N.Y.S.2d 693 (1st Dep't 1986) (individual reliance in a class action need not be handled on a case-by-case basis), *with Jo Ann Homes at Bell-more, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 216–17, (1969) (reliance by plaintiff is an element of misrepresentation) and *Harris v. Camilleri*, 77 A.D.2d 861, 431 N.Y.S.2d 65 (2d Dep't 1980) (reliance is an essential element of a fraud claim in New York).

Nonetheless, if New York choice of law rules require us to apply the law of all fifty states, this does not render the trial *per se* unmanageable. The Court doubts that the differences in the several states' laws of fraud and negligent misrepresentation are so great as to preclude class treatment. *See In re Saxon Securities Litigation*, Fed.Sec.L.Rep. (CCH) ¶ 99, 691 (S.D.N.Y. 1984); *See generally* 37 C.J.S. *Fraud* §§ 3, 23–24; W. Prosser, *The Law of Torts* §§ 105–10 (1971 4th ed.) (examining law of a variety of jurisdictions). In the event that there are material variations in the law of the fifty states, the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable. *E.g., In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. 718, 753 n. 28, 637 (E.D.N.Y. Memorandum and Order dated August 5, 1986) (certifying common-law claims). In addition, the class of plaintiffs alleging common-law fraud and negligent misrepresentation are also pressing a claim for fraud under § 10(b) and Rule 10b–5. Inasmuch as the Second Circuit has already noted that stockholder class actions are an appropriate vehicle for § 10(b) actions, *Green*, 406 F.2d 291, 295, should adjudication of the state claims become unmanageable, the Court need not decertify the entire class but could merely dismiss the pendent state claims. *Gibbs*, 383 U.S. 715, 86 U.S. 1130, 16 L.Ed.2d 218 (1966). It seems likely, however, given the similarities between federal and state law, that substantial economies can be achieved by grouping the federal 10b–5 claim with the state common-law claims for a trial on liability. In short, the difficulties in addressing the state claims of the various plaintiffs are too distant and speculative to preclude certifica-

tion of the state claims. *Robertson v. National Basketball Association,* 389 F.Supp. 867, 899 (S.D.N.Y.1975).

### 3. Tracing

The Underwriter Defendants question whether common questions of fact predominate with respect to the proposed subclass under Count 5 of the Consolidated Complaint. In Count 5, plaintiffs allege that defendants violated § 11 of the Securities Act of 1933 in an issuance of additional LILCO common stock pursuant to a prospectus dated November 15, 1982. Defendants note that a § 11 plaintiff must prove that her shares were purchased pursuant to a particular registration statement. An inability to do so is an absolute bar to recovery. 15 U.S.C. § 77k(a); *Barnes v. Osofsky,* 373 F.2d 269, 272 (2d Cir.1967). They argue that common questions of fact do not predominate because the trial of Count 5 would be rendered unmanageable by thousands of "mini-trials" limited solely to the issue of whether a particular plaintiff had purchased her shares pursuant to the November 1982 Prospectus. This issue, known popularly as "tracing," usually arises because of the existence of stock issued prior to a particular prospectus ("old" stock) and otherwise indistinguishable shares issued pursuant to a recent prospectus ("new" stock). Purchasers of "old" stock have no cause of action under § 11 because they did not buy pursuant to the Prospectus. Tracing refers to determining whether a class plaintiff owns "old" or "new" stock, *i.e.,* whether they are members of the class. Difficult questions of fact may emerge when a plaintiff attempts to prove that her shares are "new" and not "old". *See Kirkwood v. Taylor,* 590 F.Supp. 1375 (D.Minn.1984).

In the instant case, determining whether a plaintiff owned "old" or "new" common stock does not merit denial of the motion for class certification, because tracing is a question of fact reserved for trial. At this stage of the lawsuit, the Court is concerned primarily with the efficient management of judicial resources and creating a fair opportunity for a few parties to represent all others similarly situated, not with success on the merits at trial. *Eisen,* 417 U.S. at 177–78, 94 S.Ct. at 2152. With respect to the manageability issue, however, it is apparent that tracing will not pose insurmountable obstacles warranting denial of class status. The class is defined in such a way as to exclude those who did not purchase common stock pursuant to the November 1982 Prospectus and it is undisputed that the named plaintiffs for this subclass have all purchased LILCO stock pursuant to the November 1982 Prospectus. This case is therefore unlike *Kirkwood* where the named plaintiffs lacked standing to sue. 590 F.Supp. at 1383–87. Furthermore, if there is any doubt as to whether a particular plaintiff bought new or old stock, the question can be settled quickly enough because the Underwriters know who purchased stock pursuant to that offering. Even in the absence of these records, the purchaser's confirmation slip will indicate whether the shares were "old" or purchased on an underwriting. *See Kirkwood,* 590 F.Supp. at 1378 ("The direct trace method is the easiest method to understand and prove.").

Before turning to defendants' challenges to the adequacy and typicality of the named plaintiffs, there remain several areas of inquiry under Rule 23(b)(3). First, defendants apparently have conceded that class issues predominate for the § 11 claims (Counts 1–7), which comprise seven of the eight proposed subclasses. Similarly, defendants have not argued that a class action is not a superior means of adjudicating the § 11 claims. The Court is persuaded that a class action with the appropriate subclasses is the best available mechanism for litigating all of plaintiffs' claims. All of the lawsuits brought in connection with LILCO's efforts to finance Shoreham in the securities markets were commenced in the Eastern District of New York and have been consolidated before one judge for all purposes. No plaintiff has shown an interest in controlling separate litigation and, subclasses and opt out provisions can easily accomodate any such

divergent interests should they appear. Therefore, the Court concludes that plaintiffs' proposed class action meets the numerosity, commonality, predominance, and superiority requirements of Rule 23.

## B. ADEQUACY/TYPICALITY

Defendants reserve the majority of their objections for challenges to the proposed named plaintiffs. Individual Defendants and LILCO's amended Memorandum at 27–112. Defendants argue that each of the fourteen proposed class representatives is inadequate, atypical, or both. Before turning to the parties' specific arguments, it would be helpful to outline a few general principles concerning approval of proposed class representatives. Of the four elements of Rule 23(a), it is widely agreed that adequacy is the most important factor to be considered. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1765 n. 9 (1986). The Court's obligation to examine a proposed class representative's adequacy is even more significant in light of the constitutional defect that attaches to the choice of an inadequate class representative. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir.1973). There is no simple test for determining if a class will be adequately represented by a named plaintiff or plaintiffs. Each case must be approached on an individualized basis. The Court should examine a number of factors; no one element qualifies or disqualifies a proposed representative. Among the matters to be reviewed are the representative's understanding and involvement in the lawsuit, the willingness to pursue the litigation, the ability to serve as a fiduciary on behalf of the class, and any conflict between the representative and the class.[10] *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562–63 (2d Cir.1968), *reversing* 41 F.R.D. 147 (S.D.N.Y.1966); *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 100–01 (E.D.N.Y.1981).

After a careful and close examination of the evidence, the Court concludes that nearly all of the class representatives meet the requirements of Rule 23(a)(4). With respect to proposed class representative Hildeguard Schaul, who was unavailable for a deposition, should defendants unearth evidence that would indicate her inadequacy as a class representative, they may seek leave of the Court for the purpose of having Ms. Schaul removed as class representative.

Although the parties have not addressed the issue, the Court holds that a corporation, Century Maintenance Supply Corporation ("Century Maintenance"), is inadequate to represent the interests of individual class members. By its very nature a corporation's ownership, decision-making processes, and motivations are vastly different than those of individuals. For example, corporate decision-makers may be influenced by considerations that would not affect individuals. Corporate existence is infinite, but the corporation's board and management can change radically over time, either by virtue of new ownership, a simple restructuring of management, or bankruptcy. Corporate acts are taken after a decision of the board or management, and accordingly, those decisions, which can only be made after a properly convened meeting, may be the product of an internal corporate compromise, and therefore, not in the best interests of individual class members. For example, Century Maintenance presently consists of two 50% shareholders, Bruce and Russell Miller, who may be adequate representatives, but Century Maintenance could easily become a very different corporation and, therefore, an inadequate class plaintiff, should its ownership or management change. Moreover, it

---

**10.** Aside from the adequacy of the class representatives, an important aspect of adequacy under Rule 23(a)(4) is the competence of plaintiffs' counsel, an issue that defendants have chosen not to address in their motion papers. The conduct of counsel in this and other lawsuits is more than necessary to persuade the Court that plaintiffs and defendants will be represented vigorously by qualified counsel in all aspects of this lawsuit. Accordingly, this aspect of the adequacy calculus is satisfied.

is unnecessary to have, as a third class representative, a corporation whose potential conflicts of interest render it inadequate when there are already two individuals, namely Gloria Bronheim and Bluma Balsam, who are fully adequate to represent the subclass.

Turning to Rule 23(a)(3)'s requirement of typicality, the Court is also persuaded that, on the whole, the claims and defenses of the proposed class representatives are typical of the claims and defenses of the classes they seek to represent. Because there are multiple class representatives for six of the eight proposed subclasses, the atypicality of any single representative will have a minimal impact on the class. Moreover, the virtually absolute liability of § 11 largely eliminates class plaintiffs' vulnerability to unique defenses. To the extent that conflicts of interest or issues of reliance or sophistication render a particular named plaintiff atypical, this would most probably only affect the subclass bringing claims brought under § 10(b) and state common law. However, the atypicality of any one representative for that subclass is minimized because all fourteen of the named plaintiffs are representatives. At a later stage of the proceedings, the Court may remove a representative deemed atypical or require the addition of other, more typical class representatives. At this preliminary phase of the litigation, the Court need not wield the blunt ax of decertification when finer tools are available to speed the fair and efficient resolution of this action. The Court concludes, therefore, that the questions of law or fact typical of the named class representatives are typical of the subclasses they seek to represent.

## C. CERTIFICATION OF DEFENDANT UNDERWRITER SUBCLASSES

Plaintiffs have also moved to certify these consolidated lawsuits as a class action against the Underwriters and propose the creation of four subclasses of underwriter defendants.[11] Rule 23 does not preclude defendant classes and courts have found the law concerning certification of plaintiffs' classes is fully applicable here. C. Wright, A. Miller & M. Kane, § 1770. After an examination of the circumstances pertinent to this motion, the Court concludes that the action against the Underwriters should be certified as a class action. *Northwestern National Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507 (S.D.N.Y.1984).

Defendant Underwriters oppose the motion to certify on the lone ground that the "opt out" provision of Rule 23(b)(3) renders class certification meaningless. The Underwriters begin by maintaining that a defendant faced with liability in a massive securities fraud case can limit its financial exposure by removing themselves from the lawsuit. Rule 23(c)(2). By opting out, an underwriter adopts a wait and see attitude. If the plaintiff shareholders lose on liability, an underwriter has been saved the expense of defending at trial and may not be sued by plaintiffs in a second trial under the doctrine of collateral estoppel. If, however, plaintiffs win on liability and collect damages, a defendant who had opted out would not be subject to liability because plaintiffs would still be forced to commence a separate suit against each underwriter. In either eventuality, the defendants argue, an underwriter can postpone a judgment and delay the inevitable legal fees. Underwriter Defendants Memorandum at 3–4.

Despite the simple appeal of this argument, it is insufficient to persuade the Court that the actions against the Underwriters should not be certified as a class action. First, should the vast majority of underwriters perceive an advantage to opting out, plaintiffs have made it clear that they intend to join each underwriter should the Court fail to certify. Therefore, potential defendants have no leverage in threatening to opt out because they would soon be joined as named parties, who have no choice but to appear or default. Second, it does not appear that a defendant would necessarily gain a financial benefit by de-

**11.** *See* footnote 6.

fending a lawsuit at a later date. Although a defendant may decide to opt out after being faced with the prospect of damages, costs, and attorney's fees, by remaining part of the class action, defendants also retain some control of the conduct of the litigation and obtain, at almost no cost, the legal counsel available to the Lead Underwriter Defendants. Finally, it is by no means certain that opting out enables a defendant to avoid liability in the event of a decision in plaintiffs' favor on the merits in the class action. Excluding oneself from the class may mean allowing someone else's lawyer to lose your lawsuit. Postponing the entry of judgment by opting out also requires having to hire your own lawyer to do so. *Northwestern National Bank*, 102 F.R.D. at 514–15.

## ORDER

Plaintiffs' motions are granted as follows.

### A. PLAINTIFF CLASSES

1. This action shall be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2. The Class certified with respect to Count 1 of the Consolidated Complaint consists of all persons who purchased LILCO common stock issued pursuant to the registration statement and prospectus dated March 11, 1981, offering common stock to current shareholders through automatic dividend reinvestment (the "1981 ADR Plan Class"). Plaintiffs Cohen and Stepak are designated as representatives for this class.

3. The Class certified with respect to Count 2 of the Consolidated Complaint consists of all persons who purchased LILCO common stock pursuant to the registration statement and prospectus dated January 5, 1982, offering additional shares of common stock to common stockholders (the "1982 Rights Offering Class"). Plaintiff Donsky, Levin and Dashevsky, P.C. Profit Sharing Plan ("Donsky Levin") is designated as representative for this class.

4. The Class certified with respect to Count 3 of the Consolidated Complaint consists of all persons who purchased LILCO common stock pursuant to the registration statement and prospectus dated April 14, 1982, offering common stock to current shareholders through automatic dividend reinvestment (the "1982 ADR Plan Class"). Plaintiffs Cohen, Feder, and Stepak are designated as representatives for this class.

5. The Class certified with respect to Count 4 of the Consolidated Complaint consists of all persons who purchased LILCO Series V preferred stock from September 9, 1982 to February 10, 1984, pursuant to the registration statement and prospectus dated September 9, 1982 (the "Series V Public Offering Class"). Plaintiffs Joseph and Lois Silver are designated as representatives for this class.

6. The Class certified with respect to Count 5 of the Consolidated Complaint consists of all persons who purchased LILCO common stock pursuant to the registration statement and prospectus dated November 15, 1982 (the "1982 Common Stock Offering Class"). Plaintiffs Bronheim, and Balsam are designated as representatives for this class.

7. The Class certified with respect to Count 6 of the Consolidated Complaint consists of all persons who purchased LILCO Series W preferred stock from March 28, 1983 to February 10, 1984, pursuant to the registration statement and prospectus dated March 28, 1983 (the "Series W Public Offering Class"). Plaintiff Cicci is designated as representative for this class.

8. The Class certified with respect to Count 7 of the Consolidated Complaint consists of all persons who purchased LILCO Series X preferred stock from August 22, 1983 to February 10, 1984, pursuant to the registration statement and prospectus dated August 22, 1983 (the "Series X Public Offering Class"). Plaintiff Schaul is designated as representative for this class.

9. The Class certified with respect to counts 8, 9 and 10 of the Consolidated Complaint consists of all persons who, dur-

ing the period from March 7, 1978 through December 22, 1983 (the "Class Period"), purchased securities, and who continue to hold such securities on December 22, 1983, and who suffered damages thereby. Plaintiffs Ira Joel Cohen, Joseph and Lois Silver, Hildeguard Schaul, Elaine Garfinkel, Donsky, Levin, Bluma Balsam, Gloria Bronheim, Alvin M. Feder, Barnett Stepak, Alfred J. Cicci, and Geza and Fanny Kaszirer, are designated as representatives for this Class.

10. All members must have also suffered damages as a result of such purchases of LILCO securities. Excluded from the Classes are the defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any defendant.

11. Counsel for plaintiffs are hereby designated as counsel to the classes.

### B. Defendant Underwriter Classes

1. This action shall be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against the following Underwriter Defendant Classes, which are hereby certified, as follows:

(a) The Rights Underwriter Class consists of all underwriters who participated in a Rights Offering of 8,137,060 shares of LILCO common stock to LILCO common shareholders, commencing on or about January 4, 1982;

(b) The Series V Underwriter Class consists of all underwriters who participated in the public offering of 3,000,000 shares of LILCO Series V preferred stock, commencing on or about September 9, 1982;

(c) The Common Stock Underwriter Class consists of all underwriters who participated in the public offering of 8,000,000 shares of LILCO common stock, commencing on or about November 15, 1982; and

(d) The Series X Underwriter Class consists of all underwriters who participated in the public offering of 4,000,000 shares of LILCO Series X preferred stock, commencing on or about August 22, 1983.

2. The Lead Underwriter Defendants Blyth Eastman Paine Webber, E.F. Hutton & Company, Inc., Shearson Lehman/American Express Inc. (formerly Lehman Brothers Kuhn Loeb, Inc.) and Prudential-Bache Securities (formerly Bache Halsey Stuart Shields, Inc.) are designated as representatives for the Underwriter Defendant Classes.

3. Counsel for the Lead Underwriter Defendants are hereby designated as counsel to the Underwriter Defendant Classes.

### NOTICE

The parties are directed to submit a form of proposed notice to the Court within fifteen (15) days.

SO ORDERED.