**FIRST MULTIFUND FOR DAILY INCOME, INC.**

v.

**The UNITED STATES.**

**No. 196–78.**

United States Court of Claims.

July 18, 1979.

---

Carl L. Shipley, Washington, D.C., for plaintiff; Shipley, Smoak & Akerman, Washington, D.C., of counsel.

Frank M. Rapoport, and Myrna Siegel, Securities and Exchange Commission, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant. Jacob H. Stillman and William A. Dietch, Securities and Exchange Commission, Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and KASHIWA, Judges.

## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge.

The question in this case, here on cross-motions for summary judgment, is whether an open-end registered investment company must file with the Securities and Exchange Commission a registration statement covering shares of its stock that (1) had been sold under a previously filed registration statement, (2) the company had redeemed upon tender by the shareholders, and (3) the company seeks to sell again. We hold that such re-registration is required.

### I.

A. The Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 to 80a–52 (1976), was the product of congressional concern that the then existing federal secu-

rities laws "were inadequate to protect the purchasers of investment company securities." *United States v. Nat'l Ass'n of Securities Dealers*, 422 U.S. 694, 704, 95 S.Ct. 2427, 2435, 45 L.Ed.2d 486 (1975); *see also E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 52–53, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977). The statute gives the Commission "broad regulatory authority over the business practices of investment companies." *Nat'l Ass'n of Securities Dealers, supra*, 422 U.S. at 704–05, 95 S.Ct. at 2436 (footnote omitted). The Act in effect requires the registration of investment companies with the Commission pursuant to section 8 (15 U.S.C. § 80a–8) by prohibiting a wide variety of transactions by unregistered companies (section 7, 15 U.S.C. § 80a–7). Registered investment companies are required to register with the Commission under the Securities Act of 1933 their securities that they offer for public sale; the registration requirements under that Act have been modified in certain respects for investment companies. *See* section 24, 15 U.S.C. § 80a–24.

Section 6(a) of the Securities Act of 1933, 15 U.S.C. § 77f(a) (1976), provides for the registration of securities with the Commission, and section 6(b), 15 U.S.C. § 77f(b), imposes a filing fee based upon the aggregate offering price of the securities registered.

B. The plaintiff is registered with the Commission as an open-end, diversified management investment company. In col-

loquial terms, it is a mutual fund that sells its shares to and on demand redeems them from the public at a price based on a pro rata share of the net asset value of the fund . It is what is generally termed a "money market" fund, which invests in short-term debt securities. Like other open-end funds that redeem their securities on demand, plaintiff continuously sells and redeems its securities. As a money market fund, investors frequently use it as a short-term repository of funds.

From August 1974 to February 1977, the plaintiff filed with the Commission five registration statements covering a total of 1,650,000 shares. On March 17, 1978, plaintiff filed a registration statement covering 4,660,591 shares and paid a registration fee of $9,833.[1] Plaintiff asserts in its petition that this registration fee was "for re-registration of all previously registered, issued and redeemed shares."[2] Charging that the Commission's requirement that plaintiff pay the registration fee · on those shares violates section 6(b) of the Securities Act of 1933 and constitutes a taking of plaintiff's property in violation of the fifth amendment, plaintiff has filed this suit to recover the $9,833 registration fee it paid.

**II.**

■ The defendant urges us not to decide the case but to transfer it to the district court. It argues that Congress intended that disputes over the meaning and ap-

---

1. Rule 24f–2 under the Investment Company Act, 17 C.F.R. § 270.24f–2 (1978) permits a registered investment company to register an indefinite number of its shares by attaching to its registration statement a declaration to that effect and paying a $500 fee. The rule also requires the investment company in the following years to pay the regular registration fee for the shares it sold during the past fiscal year pursuant to the declaration. Five hundred dollars of the total fee of $9,833 that the plaintiff paid in 1978 covered such a declaration.

2. The difference between the 1,650,000 shares previously registered and the plaintiff's claim that all of the 4,660,591 shares registered in 1978 had been "previously registered, issued and redeemed" apparently stems from plaintiff's theory that it had registered an additional

3,016,591 shares by filing post-effective amendments to its registration statements (see *infra* pp. 8–9) that covered the additional shares. Unlike a registration statement, which automatically becomes effective 20 days after filing or amendment unless the Commission affirmatively stays its effectiveness (section 8(a) of the Securities Act of 1933, 15 U.S.C. § 77h), a post-effective amendment to a registration statement filed by a registered investment company becomes effective only after the Commission declares it to be so (section 8(c), Securities Act of 1933, 15 U.S.C. § 77h(c); section 24, Investment Company Act of 1940, 15 U.S.C. § 80a–24(a), (e). *See* Securities Act, Rule 427(b), 17 C.F.R. § 230.427(b) (1978)). The Commission never declared plaintiff's post-effective amendments to be effective.

plicability of the Securities Act of 1933 should be litigated in the district courts rather than in this court, and it suggests that transfer should be made under the doctrine of comity.

The defendant does not deny that we have jurisdiction over this claim under the Tucker Act, 28 U.S.C. § 1491 (1976), as a "claim against the United States founded . . . upon the Constitution or any Act of Congress." We know of no authority, and the defendant has called none to our attention, upon which we can transfer to another court a case over which we have jurisdiction. The only statute dealing with our authority to transfer cases is 28 U.S.C. § 1506 (1976), which directs us to transfer to an appropriate district court "a case within the exclusive jurisdiction of the district courts [that] is filed in the Court of Claims."

Since our jurisdiction was properly invoked in this case, we have an obligation to exercise it and decide the case. *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 39–40, 29 S.Ct. 192, 53 L.Ed. 382 (1909); *Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493, 496–97, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971). *See Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### III.

A. 1. Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, prohibits, with exceptions not here applicable (sections 3 and 4, 15 U.S.C. §§ 77c and d), "any person" from selling in interstate or foreign commerce or through the mails any security "[u]nless a registration statement is in effect" for that security. This broad provision covers the sale of securities by a registered investment company, as Congress recognized when it provided in section 24 of the Investment Company Act that "[i]n registering under the Securities Act of 1933, any security of which it is the issuer, a registered investment company" may deviate from certain of the requirements under the latter Act.

Except as thus modified, the standards governing the registration of securities by a registered investment company under section 6 of the Securities Act of 1933 are the same that apply to securities generally.

■ The last sentence of section 6(a) provides: "A registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered." Section 6(b) requires the payment of a registration fee of 1/50th of one percent "of the maximum aggregate price at which such securities are proposed to be offered." Read together, these two provisions indicate that the registration statement covers and the registration fee is based upon only the specific securities proposed to be offered at that time—*i.e.*, the initial distribution—and does not cover a subsequent distribution or a resale of the securities by the issuer after it has repurchased or redeemed them. The "maximum aggregate price at which such securities are proposed to be offered" refers to the initial distribution and does not cover a subsequent re-offer of redeemed shares, which necessarily would exceed the "maximum aggregate price" of the initial offer.

Since 1938, the Commission has interpreted the last sentence of section 6(a) as permitting a registration statement to cover only shares "presently intended to be offered." *In re United Combustion Corp.*, 3 S.E.C. 1062, 1063 (1938); *in re Shawnee Chiles Syndicate*, 10 S.E.C. 109, 113–14 (1941). As the Commission explained in the latter case (10 S.E.C. at 113), "The policy behind the last sentence of Section 6(a) is to assure investors that the registration statements and prospectuses on which they rely, so far as is reasonably possible, provide current information."

■ It is a reasonable corollary of this rule that a registration statement of a mutual fund may cover only the issuer's initial offering of the securities registered and not its reoffering of those securities after the issuer has redeemed them. The policy underlying the last sentence of section 6(a) of assuring investors that the registration statement and prospectus provide current

information is no less served by requiring re-registration of investment company shares previously registered and then redeemed than by the requirement that a registration statement may cover only shares intended to be currently offered. In each instance, the statutory objective of providing full disclosure to investors is served by requiring a new filing when the shares are offered subsequently.

2. The Commission and its staff for many years have interpreted section 6(a) as requiring re-registration of investment company shares that are redeemed or repurchased and then publicly resold. An affidavit of the chief counsel since 1954 of the Commission's Division of Corporation Finance, which from 1940–64 handled the registration of mutual fund shares, stated that the Division staff had advised registrants that redeemed or repurchased shares "must be re-registered prior to public resale." [3] An affidavit of the Director of the Commission's Division of Investment Management stated that since 1964 the staffs of the three different Commission divisions that at different periods were responsible for registration of investment company shares had given the same advice to registrants.

In 1977 the Commission amended its rules to permit an alternative method for determining the fee under section 6(b) for registering investment company shares. In its notice of proposed rule-making, the Commission stated that it

> has consistently taken the view that, absent an available exemption, all securities offered or sold by an issuer are subject to the registration requirements of the 1933 Act, notwithstanding the fact that such securities may have been redeemed or repurchased by the issuer subsequent to

their earlier sale by the issuer pursuant to a registration statement.

42 Fed.Reg. 15923 (1977).

Since the registration fee is calculated upon the total amount of securities being registered, the Commission's settled view might result in "inordinately high registration costs for open-end management companies and their shareholders." The Commission therefore permitted those investment companies to pay a registration fee that covers only the number of shares being registered that exceeded the number redeemed or repurchased in the previous fiscal year. Id.; 42 Fed.Reg. 31782 (1977), as amended by 42 Fed.Reg. 58403 (1977) (codified in 17 C.F.R. § 270.24e–2).

In deciding this question we are "guided by the 'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . .' Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969)." E. I. duPont de Nemours & Co. v. Collins, supra, 432 U.S. at 54–55, 97 S.Ct. at 2234. The Supreme Court applied that principle in that case in upholding the Commission's interpretation of another provision of the Investment Company Act. See also Nat'l Ass'n of Securities Dealers, supra, where the Court relied, among other things, upon an opinion of the Commission's general counsel and a staff report as showing a "consistent and longstanding interpretation by the agency charged with administration of the [Investment Company] Act" which was "entitled to considerable weight." 422 U.S. at 717, 718, 719, 95 S.Ct. at 2442.

B. Plaintiff offers four reasons for rejecting both this meaning of the language of the Act and the Commission's settled interpretation of it.

■ 1. Plaintiff argues that the Commission's interpretation of the statute is not

---

**3.** There was attached to the affidavit a 1958 letter from a former chief counsel of the Division, who referred to a 1948 letter from the Director of the Division stating that the Division would not object to the offering of redeemed shares under the original registration statement. The 1958 letter stated that the Divi-

sion had reconsidered the question and had concluded that an investment company's "registration statement is effective only as to shares originally offered and sold pursuant thereto and that such shares may not be reoffered and sold under the same registration statement."

entitled to weight because it has not been promulgated as a rule or as an interpretation of a rule and was not made public officially prior to the Commission's notice of proposed rule-making in 1977. The form in which an agency manifests its interpretation of a statute it administers is immaterial; the critical thing is whether there is such an interpretation and how settled it has become. As noted, the Supreme Court has referred to staff views as reflecting a settled Commission interpretation. The Supreme Court has relied upon an agency's contemporaneous construction "even though it was applied in cases settled by consent rather than in litigation." *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 391, 79 S.Ct. 818, 823, 3 L.Ed.2d 893 (1959).

■ 2. Plaintiff next urges that because under the law of New York, the state of its incorporation, redeemed shares are treasury stock and remain "issued," the shares need not be re-registered when they are resold. However New York may characterize redeemed shares for state law purposes, that characterization does not control the treatment of those shares under the registration requirements of the Securities Act of 1933, which is a federal statute providing its own standards. *Cf. SEC v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 69, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959); *SEC v. C. M. Joiner Leasing Corp.*, 320 U.S. 344, 352, 64 S.Ct. 120, 88 L.Ed. 88 (1943); *Capital Funds, Inc. v. SEC*, 348 F.2d 582 (8th Cir. 1965).

3. Plaintiff contends that investors will be fully protected even if redeemed shares are not re-registered prior to sale. Evaluation of this argument requires a brief description of certain statutory provisions not hitherto discussed.

■ The basic purpose of the Securities Act of 1933 was to provide investors with full disclosure of pertinent information relating to the issuers of securities and the securities themselves. *See, e.g., SEC v. Ralston Purina Co.*, 346 U.S. 119, 124, 73

S.Ct. 981, 97 L.Ed. 1494 (1953); *A. C. Frost & Co. v. Coeur d'Alene Mines Corp.*, 312 U.S. 38, 40, 61 S.Ct. 414, 85 L.Ed. 500 (1941). This is accomplished primarily through the requirements (i) that securities may be publicly offered and sold only pursuant to an effective registration statement filed with the Commission, and (ii) that a prospectus containing most of the information in a registration statement must be furnished to purchasers prior to or contemporaneously with the sale or delivery of securities. Sections 5(a), (b), 10, 15 U.S.C. §§ 77e(a), (b), 77j.

The requirement of full disclosure is strengthened by the statutory provisions imposing civil liability upon various persons connected with the distribution of securities for material misstatements or omissions in a registration statement. Section 11 (15 U.S.C. § 77k) imposes such liability upon a broad group of persons.[4] To prevail, the plaintiff must prove only the material misstatement or omission and need not prove fraud. Section 13 of the Act (15 U.S.C. § 77m) provides a one-year statute of limitations in suits under section 11, which runs from the discovery of the misstatement or omission; there is the further limitation that the suit must be filed within 3 years of the first offering of the security to the public or the date of sale of the security.

Section 24(e) of the Investment Company Act permits an investment company to register additional shares of its stock by filing an amendment to its current registration statement (known as a "post-effective amendment"), instead of filing a new registration statement. That section further provides that, for purposes of section 11 of the Securities Act, the effective date of the post-effective amendment is deemed to be the effective date of the registration statement it amends; and that the 3-year limitation period in section 13 of the Securities Act runs from the effective date of the amendment.

The plaintiff contends that requiring it to re-register the redeemed shares would not

---

**4.** A purchaser of securities may sue every person who signed the registration statement, every director or partner of the issuer, every expert named with his consent in the registration statement, and every underwriter.

provide investors with any additional protection. It states that when it sells redeemed shares, every purchaser is given a current prospectus which contains almost all information in the registration statement; and that because of section 24(e), investors would have the same limitations period within which to file a suit under section 11 of the Securities Act if the redeemed shares are covered by a post-effective amendment that they would have if the shares were re-registered.

The limitations issue is not as clear as plaintiff suggests. Although the 3-year limitations period begins to run on the effective date of a post-effective amendment, it is uncertain whether the filing of a post-effective amendment extends the period for claims based upon misstatements or omissions in the original registration statement, not repeated in the post-effective amendment but which presumably would be repeated in a new registration statement. Counsel for the Commission stated at oral argument that the limitations period would be so extended; counsel for plaintiff apparently took the contrary position. As far as we know, there has not been any decision on the point. Furthermore, it also is unclear what the effect of a post-effective amendment would be upon the one-year statute of limitations.

We cannot say with real assurance that the absence of re-registration before a registered investment company may sell redeemed shares would have no adverse impact upon the protection that Congress intended to give investors in mutual funds through the registration requirements and civil liability provisions of the Securities Act of 1933. We are unwilling to read the language of section 6 of the Act restrictively and to reject the Commission's settled administrative interpretation of it because of the conjectural conclusion that re-regis-

tration is unnecessary to protect mutual fund investors.

4. Plaintiff complains that it should not be required to pay the double registration fee that results when it re-registers redeemed securities that it previously had registered. The additional fee, however, is paid upon the resale of those shares, not upon the original distribution. Moreover, plaintiff's burden, to an undetermined but presumably significant extent, is of its own doing. When plaintiff registered the 4,660,-591 shares in 1978, it could instead have utilized the post-effective amendment procedure instituted in 1977 and received a credit for those shares that it had redeemed in the previous fiscal year. Instead, it elected to register and pay the fee for the entire issue.[5]

## CONCLUSION

Plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the petition is dismissed.

---

**5.** Plaintiff does not contend that the amount of the fee itself is unreasonable, and this modest fee of 1/50th of one percent, which has been in the statute since 1933, could not be successfully challenged on that ground. In view of our conclusion that section 6 of the Securities Act requires the re-registration of, and payment of a registration fee for, redeemed shares that are to be resold to the public, there is no substance

to plaintiff's contention that its payment of that fee constitutes a taking of its property by the government. See *Knox v. Lee,* 79 U.S. (12 Wall.) 457, 551–52, 20 L.Ed. 287 (1870); *Bowles v. Willingham,* 321 U.S. 503, 516–18, 64 S.Ct. 641, 88 L.Ed. 892 (1944); *Goldblatt v. Hempstead,* 369 U.S. 590, 592–94, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).