Naomi O. HARDEN, Antonio Mucci, Concetta Mucci and Ward O. Hughes, Jr., for themselves and on behalf of all other similarly situated noteholders of Firstmark Corporation, Plaintiffs,

v.

RAFFENSPERGER, HUGHES & CO., INC., Price Waterhouse, Leonard Rochwarger, Jeffrey Rochwarger, Arlene Rochwarger, Arnold B. Gardner, John M. Murray, Armand Castellani, John L. Hettrick, and Morris Himmel, Defendants.

No. IP 88–1057–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 3, 1996.

Hugh G. Baker, Jr., Baker Siegel & Page, Indianapolis, IN, Christopher Stuart, Much Shelist Freed Denenberg & Ament, Chicago, IL, for Naomi O. Harden, James G. Harden, Brouwer Representatives.

Gene R. Leeuw, Leeuw Plopper & Earnest, Indianapolis, IN, for Naomi O. Harden, James G. Harden, Antonia Mucci, Concetta Mucci, Evelyn M. Hughes.

Vaughn C. Williams, Skadden Arps Slate Meagher & Flom, New York City, for Leonard Rochwarger, Jeffrey Rochwarger, Rochmont Corporation.

William C. Barnard, Sommer & Barnard, Indianapolis, IN, for Leonard Rochwarger, Arlene Rochwarger, A. Gardner, J. Murray, A. Castellani, J. Hettrick, M. Himmel.

Anne H. Weinheimer, Legal Division, Indianapolis, IN, James W. Rankin, Kirkland & Ellis, Chicago, IL, for Raffensperger, Hughes & Co., Inc.

Evan E. Steger, Ice Miller Donadio & Ryan, Indianapolis, IN, for William M. Smith, Levin M. Smith.

Victor T. Fuzak, Buffalo, NY, for Armand Castellani, John L. Hettrick.

Stephen Coons, Atlanta, GA, for Ronald D. Hunter.

Brian W. Welch, McHale Cook & Welch, Indianapolis, IN, Stanley J. Parzen, Mayer Brown & Platt, Chicago, IL, for Price Waterhouse.

## ORDER

McKINNEY, Judge.

On January 9, 1996, Raffensperger, Hughes & Co., Inc. ("Raffensperger"), the only non-settling defendant in this securities class action, filed a pre-hearing brief in which it raised issues about the composition of the class and the Court's authority to order a *pro tanto* contribution bar.[1] Other issues were raised relating to the fairness to Raffensperger of the settlement between the class members and the other defendants, the propriety of using the proportionate share method of determining a setoff, and the relative culpability of the defendants. The class composition issue was reiterated in a separate filing by Raffensperger prior to the January 29, 1996, hearing on validity of class claims. *See* Def. Raffensperger, Hughes & Co., Inc.'s Obj'n to the Allow. of Cert. Claims to the Prop. Settlement, filed Jan. 16, 1996, at 3–4.

Subsequently, this Court ordered the parties to file briefs in response to Raffensperger's pre-hearing brief relating only to the issues surrounding the *pro tanto* contribution bar and the proper composition of the class.[2] The Court is now fully briefed and deems it proper to resolve those issues prior to holding an evidentiary hearing on any of the

---

**1.** A contribution bar means that a defendant with contribution rights against other defendants who have settled their dispute with the plaintiff, will be barred from seeking contribution from them. The bar is usually allowed in exchange for the non-settling defendant receiving a credit against any judgment the plaintiff obtains against him or her. Courts determine the amount of credit to award in one of two ways. The *pro tanto* method, which means the judgment credit (or reduction) will be a fixed amount, usually not exceeding the amount of the settlement. This method may be used with or without a contribution bar. *See McDermott v. AmClyde*, 511 U.S. 202, –––– ––––, 114 S.Ct. 1461, 1465–66, 128 L.Ed.2d 148 (1994). Alternatively, the proportionate share method is when the relative culpability of each defendant is determined, and the non-settling defendant's share of damages is limited by its degree of blameworthiness.

**2.** The former Firstmark directors (the "Director Defendants") filed a brief in response on February 15, 1996, in which the plaintiff class (the "Harden Class") joined. For purposes of this order when the Court refers to the plaintiffs, the Harden Class, or the Director defendants, it is referring to the settling parties. Those parties are in a similar posture of attempting to defend the original class composition and the *pro tanto* method of setoff. Price Waterhouse also responded to Raffensperger's pre-hearing brief on February 15, 1996, in essentially the same posture as the other settling parties.

remaining issues raised by Raffenspergers' pre-hearing brief.

## I. CLASS COMPOSITION

■ Essentially, the parties dispute who among Firstmark noteholders has standing to sue for a violation of § 11 of the Securities Act of 1933 (the "Act").[3] As Raffensperger has pointed out, only those noteholders with standing may properly be considered members of the class represented by the named plaintiffs. Section 11 standing is limited to those persons who purchased securities that are the "direct subject" of the allegedly defective registration statement. *Wolfson v. Solomon,* 54 F.R.D. 584, 587 (S.D.N.Y.1972); *Barnes v. Osofsky,* 373 F.2d 269, 273 (2d Cir.1967) (an action under § 11 may be maintained only by one who comes within a narrow scope of persons—those who purchased securities that are the direct subject of the prospectus or registration statement).

■ If securities of an identical kind (or of the same nature as those registered) were already being traded on the open market, purchasers of those securities must seek redress through some other means, and not through § 11. *Wolfson,* 54 F.R.D. at 588 (allowing class action consisting of two classes—the § 11 class and the class seeking relief through other securities statute). Such claimants may not avail themselves of the "relatively less stringent standards for recovery under Section 11." *Id.; see also In re LILCO Securities Litigation,* 111 F.R.D. 663, 670 (E.D.N.Y.1986) (certifying eight different subclasses of plaintiffs depending on type of security and which registration statement it was issued under). Those standards represent a deliberately lower hurdle over which a legitimate plaintiff must proceed to recovery.

■ Section 11 remedies are designed to "assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983); *Barnes,* 373 F.2d at 272. Instead of focusing on compensating purchasers for their losses, the primary concern of § 11 is to deter those preparing and registering disclosure documents from less than full disclosure. *See First Multifund for Daily Income v. United States,* 221 Ct.Cl. 123, 602 F.2d 332 (1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). To that end this statute allows a plaintiff to recover against a narrowly-defined group of defendants without having to prove reliance or scienter.[4] *Abbey v. Computer Memories, Inc.,* 634 F.Supp. 870, 874 (N.D.Cal.1986); *Kirkwood v. Taylor,* 590 F.Supp. 1375, 1378 (D.Minn.1984).

Therefore, to be able to take advantage of the lower burden of proof and almost strict liability available under § 11, a plaintiff must meet higher procedural standards. *Kirkwood,* 590 F.Supp. at 1378 ("Section 11 is very narrow in this sense."). *Id.* The most significant of the procedural standards is the requirement that a plaintiff be able to trace the security for which damages are claimed to the specific registration statement at issue. *Id.; LILCO,* 111 F.R.D. at 670 (failure to trace security to registration statement is "an absolute bar to recovery"). It is not sufficient that a security *might* have been issued pursuant to a defective statement. *Id.* at 1379; *Lorber v. Beebe,* 407 F.Supp. 279, 286 (1975). What is needed is an actual tracing to the offending statement.

Although difficult questions of fact may exist as to who may trace their notes to the

---

**3.** Section 11 of the Act provides in pertinent part:

> (a) In case any part of the registration statement ... contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue—
>> (1) every person who signed the registration statement;

>> (2) every person who was a director of ... the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> 15 U.S.C. § 77k(a)(1) and (2).

**4.** Scienter is a term art meaning knowledge by the defendant that material facts were falsely represented or omitted with an intent to deceive. **Black's Law Dictionary,** Sixth ed. (West 1990).

registration statement at issue, it is possible to establish criteria for determining proper class membership in relation to standing at the time the class is certified. *LILCO*, 111 F.R.D. at 671. The class should be defined in such a way as to exclude those who did not purchase their securities pursuant to the allegedly defective registration statement. *Id.* This Court's earlier orders revealed its determination of the type of notes that would qualify for § 11 standing in this case, but the definition of the certified class does not clearly articulate that determination. *See* Orders of August 13, 1991, at 6; April 9, 1991, at 2. A correction is in order.

■ To qualify as having been purchased pursuant to a specific registration statement, a security must be "newly issued." *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 641 (N.D.Cal.1980) (section 11 remedies cover only shares newly issued under the registration statement); *see also First Multifund,* 602 F.2d at 335 (registration statement covers and registration fee based on only the specific securities proposed to be offered at the time); *Colonial Realty Corp. v. Brunswick Corp.,* 257 F.Supp. 875, 879 (S.D.N.Y. 1966). Consequently, the analysis is directed at determining which securities are "new" and, therefore, issued *pursuant* to the registration statement.

■ This analysis is especially critical where, as here, old securities are being offered for sale at the same time as newly issued stock registered pursuant to the allegedly defective statement. Plaintiffs who cannot prove whether their stock is new or old, may not obtain standing by showing that the stock "might" have been issued pursuant to the allegedly defective registration statement. *Abbey,* 634 F.Supp. at 876; *McFarland,* 493 F.Supp. at 642; *Lorber,* 407 F.Supp. at 287. Further complicating matters is the fact that the Registration Statement refers to other Series F notes that were registered under prior statements. The issue, then, is whether all of the securities specified in the registration statement at issue may form the basis of a § 11 claim, or only those specified securities for which a registration fee has been paid to the SEC at the time of filing of that registration statement.

Section 11 itself provides guidance for determining which securities may be deemed issued pursuant to a registration statement. First, the statute prohibits the sale of any covered security "unless a registration statement is in effect" as to that security. 15 U.S.C. § 77e(a). Second, for a registration statement to be in effect, it must have been filed, as defined in the statute, and must not be the subject of a stop order or other restraints. 15 U.S.C. § 77e(c). Filing is accomplished by submitting a properly signed registration statement containing the required disclosures and by paying the appropriate registration fee. 15 U.S.C. §§ 77f(a), (c). The registration fee is based on a percentage of the "maximum aggregate price at which [the] securities are proposed to be offered." *Id.* § 77f(b).

Finally, a registration statement is deemed effective at the time both it and the registration fee are submitted to the SEC. *Id.* § 77f(c). However, the effective date of such statement is the twentieth day after its filing, or such other date as the SEC may determine. 15 U.S.C. § 77h(a). The registration statement is deemed effective "only as to the securities *specified therein* as proposed to be offered." 15 U.S.C. 77f(a) (emphasis added). If a security has already been offered under a prior registration statement, and has not been sold and redeemed, there is no need to re-register that security for it to be eligible for sale. *See First Multifund,* 602 F.2d at 335–36 (a registration statement covers only the issuer's initial offering of the securities registered, not its re-offering after issuer has redeemed them).

Thus, determining exactly which securities were issued pursuant to a given registration statement requires a look at which securities were registered. When construing the relevant provisions of the Act, the Court is left with a clear indication that the "registration statement covers and the registration fee is based upon only the specific securities proposed to be offered at that time—*i.e.,* the initial distribution—and does not cover a subsequent distribution...." *First Multifund,* 602 F.2d at 335. Because a security cannot

be sold until it is registered, and it is not registered until a registration fee is paid and a statement is filed, it follows that only those securities for which a registration fee is paid in connection with the filing of a registration statement may be deemed issued pursuant to that statement.

Here, the only "newly issued" securities under the November, 1986, Registration Statement appear to be the Flexible Interest Rate Short–Term Notes ("FIRSTnotes") whose face value is $20 million. Exhibits In Supp. of Plf's Resp. to Def. Raffensperger, Hughes & Co., Inc's Obj. to the Allow. of Cert. Clms. to the Prop. Settlement, Ex. C (hereafter "Registration Statement"). The long term investment notes that were registered pursuant to a prior registration statement, but were not sold and redeemed, are mentioned in the Registration Statement. Those old investment notes may not be deemed issued pursuant to the new registration statement. Further support for this conclusion is found in the fact that the registration fee paid by Firstmark was not calculated based on the aggregate value of the old and the new securities, but rather on the value of the FIRSTnotes.

Plaintiffs argue that because the Registration Statement on its face refers to $90 million of Subordinated Investment Notes–Series F, all of those notes should be considered issued "pursuant to" the Registration Statement. Raffensperger disagrees, as does this Court. Courts may determine the types of securities actually issued pursuant to a specific registration statement as a matter of law. *S.E.C. v. Graystone Nash, Inc.*, 820 F.Supp. 863, 873–74 (D.N.J.1993) (where court determined the distribution "contemplated and implemented by the defendants"), *rev'd and rem'd* on other grounds. Such a determination is much like construing the terms of a contract.

Nothing presented by the settling parties has persuaded this Court that its prior analysis of the Registration Statement, in which it determined that the notes covered by the Registration Statement only include the FIRSTnotes whose face value is $20 million, is in error. As noted in the prior order, the Registration Fee of $4,000.00 was based on the aggregate amount of the value of the FIRSTnotes, which is a clear indication of the amount of newly-issued stock. Plaintiffs argue that no evidence has been presented to show that the fee was paid solely for the issuance of the FIRSTnotes. That is not true. Contained in the record is evidence of prior filings relating to the only other notes mentioned in the Registration Statement. *See* Exh. in Supp. of Raffensperger, Hughes & Co., Inc.'s Reply Brf., Ex. A, Jan. 1986 Registration Statement at A00518. Those filings correspond precisely with the amount of long-term notes mentioned in the Registration Statement.

The January 1986 Registration Statement purported to register $30 million of long-term Subordinated Investment Notes–Series F. *Id.* That is the aggregate amount on which the registration fee was based at that time. *Id.* at A00626. In addition, this registration statement referred, in its explanatory notes, to a 1981 registration of $40 million in Series F Notes that are included in the $70 million of notes mentioned in the January 1986 Statement. Simple mathematics reveals that the securities being newly-offered by the January 1986 Registration Statement are the $30 million of long-term investment notes.

Likewise, the November 1986 Registration Statement at issue indicates a total of $90 million of notes, but refers to $70 million of long-term notes and $20 million of FIRSTnotes. Although the November 1986 explanatory notes do not specifically state that the $70 million in long-term notes are those registered previously by Firstmark, the inference is very strong that they are. This evidence adequately supports Raffensperger's contention that the only notes newly-issued by the November 1986 Registration Statement were the FIRSTnotes with a face value of $20 million. The Settling Parties have offered no evidence to counter this interpretation of the Registration Statement, other than to simply argue the absence of evidence.

Consequently, the definition of the class of plaintiffs who have standing to pursue litigation against Raffensperger should be rewritten as:

All persons and entities other than the defendants and their immediate families, heirs, successors and assigns and any subsidiary or affiliate thereof, who purchased or otherwise acquired any interest in Series F Subordinated Investment Notes and Certificates of Firstmark Corporation, marked Flexible Interest Rate Short–Term ("FIRST") Notes, which notes were issued and sold to such persons or entities pursuant to Firstmark's November 1986 Registration Statement No. 33–7605, Amendment No. 2 (The "Notes").

For all future purposes of this litigation this definition represents the class that is certified.[5]

■ This change in the class definition reflects a refinement of the eligible class of plaintiffs, and not a new class. The prior notice to the larger class informed noteholders that they *may* be members of the class whose rights might be affected by this litigation. This refinement facilitates determining precisely who is a member of the class. Because the refined class consists of members who were already included in the former group, no additional notice need be given to them at this time.

A court may alter or amend its previous order certifying a class at any time before the decision on the merits. Fed.R.Civ.P. 23(c)(1). A court may also divide a class into subclasses with respect to particular issues or claims, and the subclasses will be treated as a class with respect to the rules of procedure. Fed.R.Civ.P. 23(c)(4). It is not unusual for a court to recognize tentative classes or subclasses for purposes of settlement. *See* Manual For Complex Litigation Third, § 30.45 at 243 (West 3d ed. 1995) (hereinafter "Manual"); *In re Baldwin–United Corp.,* 105 F.R.D. 475, 478–79 (S.D.N.Y.1984); *In re Beef Indus. Antitrust Litig.,* 607 F.2d 167 (5th Cir.1979). Usually, however, these tentative settlement classes occur before certification of a litigation class. Manual, § 30.45 at 243.

Where, as here, a class has already been certified, it is not unheard of to have a settlement class that is different from that certified. *Id.* at 245. If the settlement class is enlarged, which is the typical circumstance, notice should be given to new members so they may opt out if desired. *Id.* When it is reduced, notice should go to those excluded because the statute of limitations will begin to run again on their claims. Here, the settlement class is the same as the original certified class, which means that all required notice has been given. The Court has now redefined the certified class to exclude those Firstmark noteholders who did not purchase FIRSTnotes pursuant to the Registration Statement.

The change was necessary to limit the class to those noteholders who actually have standing to pursue a § 11 claim based on the November 1986 Registration Statement. The holders of long-term notes, because they could not possibly trace their notes to the Registration Statement, do not have standing to bring a § 11 claim, and they do not allege any other type of securities law violations. Consequently, there is no need to notify them of their exclusion from the continuing class for statute of limitations purposes.

Although the long-term noteholders did not have standing to assert § 11 claims, it is possible they might have had other claims against the settling defendants. As long as the settling parties agree, they may enter a settlement agreement with each other and settle all claims that may be applicable. *See* Manual, § 30.45 at 245 (because such waivers might be abused, they should be reviewed carefully to determine their adequacy and fairness).

■ This Court has the authority to approve a settlement that releases claims a class has that were not actually brought in the class action. *TBK Partners, Ltd., et al v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982). As long as the Court is satisfied that the overall settlement is fair and that class members had notice and an opportunity

5. The Court has modified the certification order *sua sponte* as a result of having discovered during a dispute over the validity of claims made against the settlement fund that some of the claimants did not purchase any FIRSTnotes. *See Trautz v. Weisman,* 846 F.Supp. 1160, 1167 (S.D.N.Y.1994) (court retains power post-certification to modify the class).

to present any objections they have to the settlement, then it is possible for a judgment to bar a claim that "would have been based on the identical factual predicate as that underlying the claims in the settled class action." *Id.*

Here, the Court has already determined the settlement to be fair and the class members have had adequate notice and an opportunity to be heard. After careful review and analysis, this Court noted that class counsel investigated and considered all possible claims against the settling defendants. In fact, a violation of SEC Rule 10b–5 was alleged in an earlier version of the complaint, but this Court dismissed that claim prior to certifying the class.[6] The Court was satisfied that investigation by class counsel revealed problems with evidence of scienter and reliance, which meant potential difficulty proving the SEC Rule 10b–5 claim or a possible RICO claim. Consequently, the Court is justified in approving a settlement between the Director Defendants and a class comprised of some members who do not have standing to sue on a § 11 claim.

## II. PRO TANTO CONTRIBUTION BAR

Under § 11 of the Securities Act all defendants are jointly and severally liable for any violation of the Act. *See* 15 U.S.C. § 77k(f). Accordingly, any person who becomes liable for the payment of damages may recover contribution from any other person who is or may have been liable.[7] *Id.* Considering the purpose of § 11, joint and several liability makes the utmost sense. Section 11 is intended to enforce disclosure requirements by making all those who take part in preparing a registration statement subject to liability if it contains any false or misleading statements or material omissions. *First Multi-*

*fund,* 602 F.2d at 337; *Barnes,* 373 F.2d at 272. Regulations of this type are necessary in an area in which a significant disparity may exist between the seller and buyer as to knowledge, experience, and expertise, such as in the securities transaction context. This purpose provides the rationale for the absence of a scienter requirement and for the presumption of reliance if the securities purchased were issued pursuant to the defective registration statement.[8]

In fact, § 11 imposes what is very close to liability without fault if the registration statement is found to be false or misleading. *Lorber,* 407 F.Supp. at 285. A plaintiff's prima facie case requires proof that he or she purchased a security that was issued pursuant to a registration statement which contained a material misstatement or omission of a material fact that would make the statements not misleading. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983); *Wielgos v. Commonwealth Edison Co.,* 892 F.2d 509, 512 (7th Cir.1989) (a material error in a prospectus usually is enough to establish § 11 liability). Section 11 imposes strict liability for such misstatements or omissions provided that they are material. *Greenapple v. the Detroit Edison Co.,* 618 F.2d 198, 203 n. 9 (2d Cir.1980); *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir.1991). A common feature of strict liability is that liability may be assigned without a finding of fault on the part of the defendant. *See Western Fuels–Utah, Inc. v. Federal Mine Safety & Health Rev. Comm.,* 870 F.2d 711, 713 (D.C.Cir.1989) (strict liability alters the general rule by eliminating the requirement of certain intent).

---

**6.** The Notice of Class Action informed class members of that dismissal. *See* Notice of Class Action, September 3, 1991, at 2, n. 2.

**7.** The Court notes that this section was amended effective December 22, 1995, and changes were made to the provisions for determining the liability of an outside director in a § 11 case. That liability is to be determined in accordance with Section 38 of the Securities Exchange Act of 1934. Although no Section 38 exists, the Court found relevant language in 15 U.S.C. § 78u–4(g). Essentially the changes incorporate proportion-

ate share liability, a scienter requirement and a codification of the contribution bar as sought here. Also included is a provision for a judgment credit or setoff in an amount equal to the settlement or the party's proportionate share, whichever is greater. These provisions are not retroactive.

**8.** In this context, scienter is equivalent to intent or knowledge, and reliance is a method of proving causation.

The category of defendants upon whom this strict liability is imposed includes all signers of the registration statement, all directors or partners of the issuer, every professional who made an authoritative statement in the registration statement based on his or her area of expertise, and every underwriter with respect to such security. The settling defendants in this class action include the directors of Firstmark and its accounting firm, Price Waterhouse. Raffensperger is considered an underwriter for purposes of § 11 liability.[9] As an underwriter, Raffensperger is exposed to strict liability if the Registration Statement is proven to contain a false or misleading statement or a material omission. The underlying goals of securities legislation—encouraging diligence and discouraging negligence—are furthered "by exposing issuers and underwriters to the substantial hazard of liability for compensatory damages." *Eichenholtz v. Brennan*, 52 F.3d 478, 484 (3d Cir.1995).

In *Eichenholtz*, the underwriter argued that it should be allowed to pursue a contractual indemnification provision against the issuer because the underwriter played such a minimal role in the public offering. *Id.* The underwriter characterized itself as "merely negligent." *Id.* Disagreeing, the court noted that the policies of the 1933 and 1934 Acts "demand that all underwriters be encouraged to fulfill their duties in a public offering, regardless of their role." *Id.* at 485. Underwriters are "encouraged" by the risk of liability to perform a thorough independent investigation before agreeing to participate in a public offering.[10] *Id.*

■ Although the right to contribution from fellow defendants is statutorily prescribed, a court may approve as part of a settlement in multiparty cases an order barring claims for contribution, unless prohibited from doing so by statute. Manual, § 23.13 at 169–70; *Eichenholtz*, 52 F.3d at 486. Those orders usually include a formula by which an amount can be computed as a setoff for the nonsettling defendants in the event of a judgment against them. Manual, § 23.13 at 170. Provided that the court is satisfied that the settlement is fair and adequate, and the contribution bar does not prejudice the rights of non-settling defendants, the court retains the authority to order a contribution bar upon approval of a partial settlement. *Eichenholtz*, 52 F.3d at 486.

■ Here, the Court is not prohibited by statute from ordering a contribution bar, nor is it guided by statute as to how the judgment credit should be structured. Raffensperger argues that the Court may not order a *pro tanto* contribution bar, because the amount of the settlement is so low that Raffensperger is not adequately compensated for giving up its contribution rights. The non-settling defendant also argues that this method leads to an unfair result, with the most culpable parties "attempting to extinguish their liability forever for mere pennies on the potential liability dollar." Def. Raffensperger, Hughes & Co. Inc.'s Reply Brf. at 4. Arguing in favor of a proportionate share method of setoff, Raffensperger implies that this Court should only approve a settlement that ensures that Raffensperger "is not left holding the bag." *Id.*

Raffensperger misperceives the way proportionate share works. The Director Defendants are not the ones who will lose should this Court order proportionate share setoff, the Harden class members will. *Id.* at 487 (with proportionate share setoff the risk of a "bad" settlement is on the plaintiffs). They are the ones whose judgment may be reduced by an amount that exceeds the amount they have obtained in settlement. If Raffensperger's intent is to get the Director Defendants to bear more of the financial burden, their efforts are misplaced.

---

9. See *Harden v. Raffensperger, Hughes & Co., Inc.*, 65 F.3d 1392 (7th Cir.1995), in which the court affirmed this Court's prior ruling that Raffensperger was subject to § 11 liability as an underwriter when it acted as a "qualified independent underwriter."

10. They are not, however, cast in the role of insurers of the offering. By conducting a reasonable investigation and by having a reasonable belief that the information relating to an offering is accurate and complete, an underwriter may employ a "due diligence" defense to liability. *Eichenholtz*, 52 F.3d at 485.

Another problem with Raffensperger's argument is that it ignores the procedural posture of this case, the method of imposing liability under § 11, and the purpose behind § 11. First, the settlement agreement being considered is conditioned on this Court issuing a contribution bar order with a *pro tanto* method of setoff. Essentially, it is in a take it or leave it posture. The Court is not free to modify the agreement to force the parties to agree to proportionate share liability. Instead, the Court's disallowance of *pro tanto* setoff likely would undermine a two and a half year old settlement agreement. Such a result does not further the strong federal interest in settlements of large multiparty class action cases. *See Eichenholtz*, 52 F.3d at 486.

To justify the Court denying the settling parties the benefit of their bargain, Raffensperger would need to provide substantial evidence of prejudice to it by this setoff method. The extent of their evidence, however, has been directed at assigning blame for the alleged misleading statements. Without citing any authority for the proposition, Raffensperger states that under the securities laws its liability must reflect its culpability. Def. Raffensperger, Hughes & Co. Inc.'s Reply Brf. at 5. While that may be true with certain securities laws, it is not a requirement for liability to attach under § 11. Consequently, all efforts directed at dissuading the Court from approving the *pro tanto* method on the basis of its failure to apportion liability according to fault are unavailing.

Second, as already noted, § 11 imposes strict liability on those entities proven to have participated in the preparation and implementation of a public offering. The only exception is if the outside defendant can prove due diligence, or some other affirmative defense. Strict liability means liability is imposed without regard to fault, in the sense of intent to mislead. *See Western Fuels–Utah, Inc.*, 870 F.2d at 713. Consequently, it makes no sense to force the parties to agree to a setoff method that depends on a determination of relative fault. The cases cited by Raffensperger as supporting the proportionate share method primarily involve areas of law in which a finding of culpability is impor-

tant (fraud), or the tort law has developed into a comparative fault system (admiralty), or where there is an utmost concern about apportioning liability (CERCLA; ERISA).

Finally, the purpose behind § 11 liability, as previously noted, is to encourage diligence and full disclosure, and to discourage negligence. To fulfill that purpose, the law imposes joint and several liability on the defendants in a § 11 case, which means that any one of them could be responsible for the full amount of a plaintiff's damages. Also furthering that purpose is the imposition of liability without fault upon a finding that the registration statement violates the statute and the plaintiff can trace his or her security to that statement. The purpose is not furthered by allowing any one defendant to escape paying damages for harm caused by a defective registration statement merely by proving that others were more culpable.

For all of these reasons, the Court finds that it has the authority to order a contribution bar against Raffensperger, and the discretion to determine the proper method of setoff in the event of an adverse judgment against them. The *pro tanto* method of setoff is hereby **APPROVED**. In the event that Raffensperger suffers an adverse judgment in the trial on the merits, that judgment will be reduced by an amount equal to the total amount obtained through both the Price Waterhouse and the Director Defendant settlements by FIRSTnote holders.

### III. CONCLUSION

The limited purpose of this order has been to analyze and rule on the issues surrounding the proper composition of the class and those issues involved with a *pro tanto* contribution bar order that was requested by the settling parties. Having reviewed its prior orders and been fully briefed by the parties, the Court has determined that the class previously certified in its April 9, 1991, order should be modified. For purposes of the settlements between defendants Price Waterhouse and the former Firstmark directors, the previously defined class is now designated a settlement class. However, the class that may continue this litigation against defendant Raffensperger is limited to:

All persons and entities other than the defendants and their immediate families,

heirs, successors and assigns and any subsidiary or affiliate thereof, who purchased or otherwise acquired any interest in Series F Subordinated Investment Notes and Certificates of Firstmark Corporation, marked Flexible Interest Rate Short–Term ("FIRST") Notes, which notes were issued and sold to such persons or entities pursuant to Firstmark's November 1986 Registration Statement No. 33–7605, Amendment No. 2 (The "Notes").

Only those class member have standing to continue in a § 11 action against Raffensperger.

With respect to the *pro tanto* contribution bar, the Court has determined that it does have authority to order a contribution bar when a partial settlement has occurred between certain defendants and the class members. This authority depends on the Court finding that the contribution bar does not prejudice the rights of the nonsettling parties, in this case, Raffensperger. Because § 11 liability does not depend on a finding of fault against a defendant, the Court has determined that a *pro tanto* method of settlement does not prejudice Raffensperger in the sense that an adverse judgment against this defendant may not reflect its relative fault.

Moreover, by disapproving the *pro tanto* method, the Court will undoubtedly disrupt a two and a half year old settlement obtained through much negotiation and effort, without significantly benefitting the plaintiff class. Much of the reason for conditionally approving the settlement was that the inside directors were judgment-proof and the outside directors had potentially significant defenses. Given the strong interest in settlements of multiparty, complex litigation, choosing a method of setoff that would disrupt a settlement and not afford a significant benefit to the plaintiff class would be wrong. Finally, the Court finds that by approving the *pro tanto* method of setoff, the purposes behind § 11 liability will be furthered in that the scheme of almost strict, joint and several, liability will be maintained.

IT IS SO ORDERED.